## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In Re: ENFORCEMENT OF A RESTRAINING )
ORDER BY THE ONTARIO SUPERIOR COURT )
OF JUSTICE TO RESTRAIN THE FOLLOWING )
PROPERTIES OWNED OR CONTROLLED BY )
XIAO HUA GONG IN THE UNITED STATES )
INCLUDING: )
)
)      1:18-MC- _____
ANY OR ALL INTEREST IN REAL PROPERTY )
LOCATED AT 2001 NORTH DIVISION STREET )
(ROUTE 14) HARVARD, ILLINOIS )
)
ANY OR ALL INTEREST IN REAL PROPERTY )
LOCATED AT 600 TOWN CENTER DRIVE, )
DEARBORN, MICHIGAN )
)
ANY OR ALL INTEREST IN REAL PROPERTY )
LOCATED AT 55 EAST WASHINGTON, )
CHICAGO, ILLINOIS (floors 2-12 and 23-40) )

## THE UNITED STATES' *EX PARTE* APPLICATION
## TO ENFORCE AND REGISTER FOREIGN RESTRAINING ORDERS
## PURSUANT TO 28 U.S.C. § 2467(d)(3)(A) AND 18 U.S.C. § 983(j)(1)(A)

The United States of America, by and through its undersigned attorneys, respectfully

submits this application for entry of an order pursuant to 28 U.S.C. § 2467(d)(3)(A) and 18

U.S.C. § 983(j)(1)(A). The application seeks enforcement of three December 19, 2017 foreign

restraining orders issued by the Ontario Superior Court of Justice in Ontario, Canada to restrain

three commercial properties in the United States identified in the Canadian orders owned by

Xiao Hua Gong a/k/a Edward Gong and legal entities he owns and controls. The December 19,

2017 restraining orders stem from a criminal prosecution in Canada against Xiao Hua Gong a/k/a

Edward Gong for several violations of the Criminal Code of Canada. The Canadian restraining

orders have been certified for enforcement by the Assistant Attorney General of the U.S.

Department of Justice's Criminal Division in accordance with 28 U.S.C.

§ 2467(d)(3) and (d)(3)(B)(ii). *See* Exhibit A.

## I.   JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 2467.

Venue is proper in this Court pursuant to 28 U.S.C. § 2467(c)(2)(B), which provides, in the

relevant part, that "venue shall lie in the district court for the District of Columbia or in any other

district in which . . . the property that may be the basis for satisfaction of a judgment under this

section may be found."

## II.   FACTUAL BACKGROUND

On December 20, 2017, the Attorney General of Ontario, Canada charged Xiao Hua

Gong (aka Edward Gong) ("Gong"), 53, with committing several criminal violations of Canadian

law from January 2012 through December 2017, including fraud, possession of property

obtained by crime, laundering proceeds of crime, and uttering a forged document.  Gong, a

Canadian citizen and a resident of Ontario, was arrested by Canadian authorities.  On December

19, 2017, upon the application of the Attorney General for a restraining order pursuant to Section

462.33 of the Criminal Code of Canada ("Criminal Code"), Justice McMahon of the Superior

Court of Ontario issued three orders restraining three real properties located in the United States.

The three real properties, according to the Canadian investigation, were purchased with funds

traceable to the crimes for which Gong was charged, and therefore, are subject to forfeiture upon

Gong's conviction under Canadian law.

On January 29, 2018, Canada transmitted the restraining orders to the United States

Department of Justice for execution pursuant to a Mutual Legal Assistance Treaty (the "MLAT")

between the two countries. Canada has requested that the United States enforce the three restraining orders so that Gong's U.S.-based assets will be available for forfeiture.

The Canadian charges arise from an investigation by the Joint Serious Offences Team (JSOT) of the Ontario Securities Commission (OSC) into Gong's alleged use of the internet to make fraudulent solicitations involving investment opportunities using two corporations, 024 Pharma PLC (024) and Canada National TV Inc. (CNTV). According to the MLAT request, Gong was the mastermind of fraud schemes through which he has allegedly obtained over $200 million from victims largely in China from 2012 through 2016. Gong's co-conspirators have been identified in New Zealand, China and Canada. JSOT's investigation revealed that Gong used approximately $50 million in proceeds from the fraudulent scheme to purchase, among other things, three commercial properties located in the United States[1].

A. Gong's 024 and CNTV Schemes

According to JSOT's investigation, 024 was registered in the United Kingdom, with three directors. Gong was listed as an officer and director. Gong's daughter was listed as another director. UK corporate records reveal that 024 was dissolved on March 23, 2010 for failure to file required corporate reports. In December 2012, Gong purchased and registered a new version of 024, which was operating primarily out Canada, called 024 Pharma Inc. Gong, however, fraudulently sold and distributed thousands of shares from the original dissolved company. Between January 1, 2012 and December 20, 2017, according to Canadian investigators, Gong's

---

[1] The MLA request states that the Chinese Ministry of Public Security (MPS) and New Zealand Police (NZP) also conducted investigations into these schemes. Chinese investigators identified eleven suspects in China who were arrested and interviewed, as well as victims. Some of the suspects admitted to their involvement in the schemes. NZP identified co-conspirators and victims in New Zealand and China involving the same schemes. On March 24, 2017, the NZP obtained restraining orders from a New Zealand court in civil proceedings against six bank accounts, a property and a vehicle in New Zealand valued at about $50 million USD.

defunct 024 company distributed worthless shares to over 40,000 individual shareholders in China.

From his residence in Toronto, Canada, Gong used a publicly available website[2] as the primary means to promote 024 and its products, and CNTV. The 024 website included a promotional video staring Gong himself touting the supplements produced by 024 and the company's intention to trade its stock over public exchanges. Specifically, investors in China were offered and induced to purchase a package from 024 containing a bottle of health supplements purportedly manufactured by 024 and 500 shares of 024. The health supplements varied, consisting of, for example, seal oil, anti-smog pills, or anti-stress pills. The package cost approximately $780 USD. Investors in China were advised on the 024 website that the shares of 024 which manufactured the supplements were expected to rise in value 2,000% to 4,000% because the shares were or are going to be publicly traded. JSOT's investigation reveals that both claims were false. 024 was a dissolved inactive company. However, the American company with the name 024 Pharma Inc. (zero24) which Gong purchased did trade on the "over-the-counter" market and distributed supplements. By using a name similar to the operating company, Gong gave potential investors the false impression that 024's shares were publicly traded and was carrying out its stated business.

In fact, Gong purchased the health supplement products purportedly made by 024 from a Canadian company called Prime Nutrisource Inc. The products were relabeled in Canada and then shipped by Gong to China using a number of Canadian shipping companies. While the

---

[2] A person who worked with Gong to build and maintain the 024 website told investigators that Gong provided all the data for the creation of and representations on the website. He said Gong's goal was to sell 200 million euros in shares.

package of health supplements and shares were sold to investors in China and elsewhere for approximately $780 USD, the health supplements alone could be purchased from a store for less than approximately $39 USD and the shares were worthless. JSOT investigators represent finding no steps were taken to begin to reactivate the inactive company, and even if its shares were marketed as a "gift" for purchasing the supplements, the promotional materials and obvious low value of the supplements make clear that investors were induced to purchase the package for the "valuable" shares of 024.[3]

Later, beginning in July 2015, Gong promoted another investment opportunity in China, for shares of CNTV. Investors were told that these high-tech media company shares were to be submitted for trading on the Nasdaq stock market in the United States, and, therefore, "this was an opportunity for a wise person." Gong is the sole officer and director of CNTV. As in the 024 scheme, JSOT's investigation indicates that the Chinese investors in CNTV shares were investing in an "empty box," as funds raised did not go to running or growing the companies. In reality, Gong simply converted the funds for his personal use or benefit.

According to the Canadian MLAT request, in addition to the other crimes with which Gong is already charged, the schemes and the distribution of both company's shares violated both Canadian securities law and Chinese law. For instance, Gong failed to follow the filing and registration requirements of securities law in Canada.

---

[3] JSOT found evidence Gong used a Canadian brokerage company to distribute the 024 shares. The company said it was hired by Gong as 024's transfer agent in April, 2009 in a contract signed by Gong and his daughter. The company received treasury directives in Canada from Gong regarding 024 shares. Between April 2009 and January 2016, the company reported it issued approximately 150 million share certificates in Chinese names matching the names on the directives. The company was paid for its services from Gong's CNTV account. Although it denied being involved in the transfer of CNTV shares, it was aware that Gong was distributing CNTV shares.

B. Gong's financial transactions through Canadian and U.S. financial institutions

JSOT's investigation reveals that Gong transferred approximately $50 million USD into the Bank of Montreal (BMO) in Canada during 2015 and 2016 which was used to purchase U.S. properties. JSOT reports that from its review of legally obtained banking records for Gong, Gong used nominee controlled accounts in China to receive funds in connection with the alleged 024 and CNTV schemes. Gong and his nominees operated the accounts largely over the internet from Canada. Gong moved the money from China to accounts he controlled in Canada and New Zealand through a company in China. The Chinese company will be referred to as "Chinese Company A" throughout this application.

Specifically, between January, 2015 and April, 2016, JSOT investigators found that Gong deposited funds valued at approximately $114,938,932 USD into Chinese Company A's accounts in China. Between these same dates, Chinese Company A transferred a total of approximately $106,021,155 USD (in Canadian currency) and $4,555,653 USD into Gong's bank accounts in Canada and approximately $1,986,050 USD (in New Zealand currency) into Gong's bank account in New Zealand. Thus, in total, the bank records establish a connection between funds totaling approximately $101,200,718 USD deposited into Gong's accounts in Canada and New Zealand, and the funds connected to the alleged 024/CNTV scheme in China. This constitutes 90% of funds that Chinese Company A deposited into Gong's bank accounts in Canada and New Zealand. JSOT has further traced the funds received by Gong into properties, bank accounts and other assets. The purchases include three real properties located in the United States which are the subject of the Canadian restraining orders sent to the U.S. for enforcement.

C. The Properties to be Restrained:

The three restraining orders issued by the Ontario Superior Court of Justice, in Ontario, Canada, on December 19, 2017 restrain the following three real properties and any insurable

6

interest in the properties including the right to receive the proceeds of insurance of any policies issued against the properties:

a) First Restraining Order: Land and Commercial premises at 2001 North Division Street (Route 14), Harvard, IL (Harvard, IL Property), *see*, Exhibit A, Attachment A-1:

The former Motorola, Inc., plant at this address was purchased on May 20, 2016 for $9,765,000 USD by Edward Harvard Holdings LLC, an Illinois Corporation, registered on May 2, 2016.  Gong is listed as the president of Edward Harvard Holdings LLC.  From bank records, the funds to purchase the Harvard, IL Property were traced to monies received by Gong from Chinese Company A, the company used by Gong to transfer funds from China to Canada.

Specifically, the funds to buy the Harvard, IL Property were traced through bank accounts of another corporation owned by Gong.  The funds were transferred from a company Gong owns called Edward Village Group LLC.  Edward Village's CAD account received $18,675,826.59 USD from Chinese Company A in China between July 7, 2015 and December 8, 2015, with an additional $1 million from an escrow account in China.  Approximately $19.1 million was then transferred to the Edward Village's USD account held at Bank of China in Canada.  Of those funds, $9,738,250 USD in funds were transferred to purchase the Harvard, IL Property.

b) Second Restraining Order: Land and commercial premises at 600 Town Center Drive, Dearborn, Michigan 48126, (Dearborn, MI Property), *see*, Exhibit A, Attachment A-2:

The Dearborn, MI Property includes the land, a hotel and a conference center purchased by Gong through a corporation he owns called 600 Town Center Realty LLC (Realty LLC) on January 14, 2016, for $20 million USD.  Realty LLC was created and registered in Michigan on January 5, 2016.

On December 31, 2015, Edward Village's USD account maintained at Bank of Montreal wired $23 million USD to purchase the hotel. The funds in the Bank of Montreal account were received from Chinese Company A in China which had transferred the funds first to the Edward Village Bank of Montreal CAD account.

c) Third Restraining Order: Certain premises within the Pittsfield Building at 55 East Washington, Chicago, IL (Chicago, IL Property), *see*, Exhibit A, Attachment A-3:

The Chicago, IL Property is only a part of the Pittsfield Building, floors 2-12 and 23-40. It was purchased by Gong through his corporation called Jewelry Tower LLC on August 25, 2017 for $20.8 million USD. Jewelry Tower LLC was registered on July 20, 2017 in Illinois. Gong is a manager and registered agent of the company.

The funds used by Gong to purchase the Chicago, IL Property came from an August 22, 2017 mortgage totaling $25 million secured by two Canadian hotels owned by Gong[4]. Bank records show that the funds used to acquire the two Canadian hotel properties which were mortgaged to buy the Chicago IL Property include funds traceable to money derived from the fraud scheme that was transferred to Gong's accounts in Canada from Chinese Company A accounts in China during the fraud schemes.[5]

---

[4] Through Gong's corporation 2475933 Ontario Inc., Gong owned a hotel located at 50 East Valhalla Drive in Markham, Ontario (Hotel Number 1), and though his corporation 2473449 Ontario Inc., Gong owned another hotel located at 185 Yorkland Blvd. Toronto Ontario (Hotel Number 2).

Hotel Number 1, was purchased by 2475933 Ontario Inc. on October 20, 2015 for $28 million. Hotel Number 2 was purchased on July 31, 2015 by 2473449 Ontario Inc. for $22,442,118.33. Gong is the sole officer and director of both corporations. Both hotels were pledged to secure a mortgaged on August 22, 2017 for $25 million.

[5] JSOT traced the funds to purchase Hotel Number 2 to the Edward Village's Bank of Montreal account that received $67,403.305.73 between March 15, 2015 and February 26, 2016. Of that amount 99.59% was traced to Chinese Company A, the company used by Gong to transfer fraud

## IV.    LEGAL AUTHORITY

Pursuant to 28 U.S.C. § 2467(d)(3), federal courts are authorized to issue orders to

preserve property during the pendency of foreign forfeiture proceedings until receipt of an

enforceable, final foreign forfeiture or confiscation judgment. *See* Preserving Foreign Criminal

Assets for Forfeiture Act of 2010, Pub. L. No. 11-342, 124 Stat. 3607 (codified as amended in 28

U.S.C. § 2467(d)(3)).[6]  Section 2467(d)(3)(A) provides:

> [t]o preserve the availability of property subject to civil or criminal forfeiture
> under foreign law, the Government may apply for and the court may issue a
> restraining order at any time before or after the initiation of forfeiture proceedings
> by a foreign nation.

Section 2467(d)(3)(A) also requires that the U.S. restraining order be issued "consistent

with subparagraphs (A), (C), and (E) of subparagraph [(d)](1) and the procedural due process

protections for a restraining order under section 983(j) of title 18." 28 U.S.C. § 2467(d)(3)(A).

Consequently, the district court may deny enforcement of a foreign restraining order if it finds

that the order was obtained without due process, was issued by a foreign court that lacked subject

matter jurisdiction, or was obtained by fraud.  The statute's cross-references to § 983(j) of Title

18 do not require that criminal or civil forfeiture proceedings be filed in the United States to

enforce a foreign court's restraining order, but rather, the foreign criminal or forfeiture

proceedings initiated abroad should comport with U.S. notions of due process. *See* 28 U.S.C.

§ 2467(d)(3)(A)(ii)(II); *see also Luan v. United States*, 722 F.3d 388, 394-97 (D.C. Cir. 2013)

(holding that the filing of a foreign civil forfeiture complaint is not required, but that

---

proceeds from China to Canada.  JSOT has also traced some of the funds to purchase the hotels
to the Edward Village's Commercial and Industrial Bank (ICBC) account, and of that amount
99.72% was traced to money received by Gong from Chinese Company A.

[6] The statute now clearly authorizes courts to issue a restraining order "at any time before or after
the initiation of forfeiture proceedings by a foreign nation." 28 U.S.C. § 2467(d)(3)(A)(i) (2012).

"applicable" foreign criminal proceedings, sufficient to justify the restraint of assets indefinitely pending final forfeiture, should entail "procedural due process protections consistent with those that the filing of an American civil forfeiture complaint" would have afforded Luan). In line with analogous procedures in a domestic civil or criminal forfeiture proceeding under 18 U.S.C. § 983(j), U.S. courts may issue orders appropriate to preserve property during the pendency of foreign criminal or forfeiture proceedings.

Certification by the U.S. Attorney General or her authorized designee that enforcement of the foreign restraining order is in the "interest of justice" is a prerequisite for enforcement of a foreign order. *See* 28 U.S.C. § 2467(b)(2). On May 9, 2006, the Attorney General delegated authority for the certification of orders under this provision to the Assistant Attorney General for the Criminal Division ("AAG"). *See* Exhibit B, DOJ Order No. 2820-2006. The AAG's determination is not subject to judicial review. *See* 28 U.S.C. § 2467(d)(3)(B)(ii) and § 2467(b)(2).

## V.    DISCUSSION

A.    The Canadian Restraining Orders Meet the Requirements For Enforcement Under §2467(d)(3)(A)

Section 2467 sets forth the following criteria that are relevant in considering a request for enforcement of a foreign restraining order: (1) whether the United States and the foreign nation seeking enforcement of the order are parties to a formal, international agreement providing for mutual forfeiture assistance, § 2467(a)(1); (2) whether the Attorney General has determined it would be in the interest of justice to certify the order for enforcement, § 2467(b)(2); (3) whether the foreign order was issued consistent with due process, § 2467(d)(3)(A)(ii)(I); (4) whether the foreign court had subject matter jurisdiction to issue the restraint, *id.*; and (5) whether there is

10

any reason to believe the foreign order was obtained by fraud, *id*.[7]  The Canadian restraining

orders meet the above criteria for registration and enforcement pursuant to § 2467 and, therefore,

entry of the proposed anticipatory U.S. restraining order is both necessary and appropriate to

preserve the property for eventual forfeiture in Canada.

    1.  Agreement on Forfeiture Assistance

First the United States and Canada are parties to a Mutual Legal Assistance Treaty that

entered into force on January 24, 1990.  *See, Treaty Between the Government of the United*

*States of America and the Government of Canada on Mutual Legal Assistance in Criminal*

*Matters, U.S.-Can., March 18, 1985, S. Treaty Doc. No. 100-14 (1990).*  Under this Treaty, the

United States has an obligation to assist Canada in forfeiture related matters, including the

restraint of criminal proceeds and restitution to the victims of crime.  *Id.* at Article 17.

Accordingly, the first criterion for enforcement is met because the United States and Canada are

parties to an international agreement authorizing forfeiture assistance.

    2.   Attorney General Certification

Second, the Canadian restraining orders were certified by the Acting AAG on May 21,

2018.  The Acting AAG, in certifying the order, acknowledged that he has considered the facts

of the case, the foreign law, the applicable U.S. law, and the circumstances of the judiciary from

where the order came, and has concluded that enforcement of the foreign restraining order

pursuant to 28 U.S.C. § 2467 is "in the interest of justice."  *See* Exhibit A, Acting AAG

---

[7] *See In re Restraint of All Assets Contained or Formerly Contained in Certain Investment Accounts at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d 32, 42 (D.D.C. 2012) (asserting that in considering an application for a restraining order under § 2467(d)(3), a "district court should begin with the premise that the foreign proceedings or procedures are in fact compatible with due process").  An affected party may appear in this proceeding to challenge any U.S. restraining order issued as a result of this application by making an affirmative showing that the foreign order or process were defective.

Certification and Canadian restraining orders.  Thus, the second criterion for enforcement is met.

### 3.  Due Process

Third, the restraining orders issued by the Canadian court were issued consistent with due process.  Canadian law provides due process protections for property owners and third-parties who might be impacted by the restraining orders.  Pursuant to Section 462.34 of the Criminal Code, anyone with an interest in property that was seized under a warrant or a restraining order may, at any time, apply for an order to revoke or vary the restraint order.  Moreover, Section 462.33 (5)-(8) of the Criminal Code provides for notice to the owners or interested parties.  In particular, Section 462.33(8) provides that a copy of the restraining order shall be served on the person to whom the order is addressed in such manner as the judge directs or as may be prescribed by rules of court.

The total value of Gong's property in Canada that is already restrained is approximately $57,869,553 USD, and in New Zealand approximately $50 million, much less than the amount alleged to be obtained through fraud by Gong.  Thus restraint of these three properties purchased for approximately $50 million will not exceed the total to be restrained under the Canadian court order. Gong has been provided with notice of the restraining order with respect to the Canadian property.  As usual, upon the entry of a U.S. court order enforcing the three Canadian restraining orders, the United States will provide notice of the U.S. order to Gong through an MLAT request.

### 4.  Subject Matter Jurisdiction

Fourth, the Ontario Superior Court of Justice had both personal and subject matter jurisdiction to issue the restraining orders.  Under Section 462.3(1) of the Criminal Code, a "designated offence" includes any indictable offence which would include the fraud charges

against Gong. Gong is a resident of Ontario, and the alleged fraud was committed in Ontario, the province in which the Ontario Superior Court of Justice has jurisdiction. As such, the Ontario Superior Court of Justice is the proper authority to issue the restraining order and later forfeiture order in this matter. Therefore, the fourth requirement concerning jurisdiction is also satisfied.

### 5. Absence of Fraud

Fifth, the United States has no reason to believe that the Canadian restraining orders were obtained by fraud on the part of Canadian authorities.

### B. Dual Forfeitability Is Satisfied

In an application to enforce a foreign restraining order (as opposed to a final judgment), the United States, on a plain reading of the statute, may not need to show that the criminal conduct supporting the foreign restraining order would also give rise to forfeiture if it had been committed in this country. *See* 28 U.S.C. § 2467(a)(2)(A) (defining "forfeiture or confiscation judgments" in such a way that requires a showing of dual forfeitability); § 2467(d)(3)(A)(ii)(I) and (d)(3)(B)(ii) (setting out the procedures for enforcement of a foreign restraining order with no mention of, nor cross-reference to, the subsection of the statute concerned with dual forfeitability). In the published decisions of this Court, one judge *has* applied the requirement without discussion, and another *declined* to resolve the question of whether dual forfeitability must be demonstrated by the United States in the restraint phase. *Compare In re Seizure of Approx. $12,116,153.14 and Accrued Interest in U.S. Currency*, 903 F. Supp. 2d 19, 30 (D.D.C. Nov. 9, 2012) (stating that dual forfeitability is a requirement for enforcement of a foreign restraining order and deciding that the United States satisfied it), *with In re Restraint of Certain Investment Accounts at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d 32, 41 (D.D.C. May 17, 2012) ("[Section 2467(d)(3)] does not expressly incorporate the dual forfeiture requirement that applies

13

to final orders of forfeiture . . . however, the Court need not resolve the question . . . because, even assuming its applicability, it is satisfied in this case"). As a practical matter, the United States acknowledges that dual forfeitability may become relevant if and when Canada asks the United States to enforce a final confiscation judgment and the United States applies to enforce such a final judgment.

Dual forfeitability, nevertheless, is satisfied here because Gong's underlying criminal conduct would be chargeable under various U.S. criminal laws giving rise to forfeiture under U.S. law. Gong is charged in Canada with violations of its Criminal Code including fraud over $5,000 CAD in violation of Section 380(1)(a), possession of property obtained by crime in violation of Section 351(1), laundering of proceeds of crime in violation of Section 462.31, and uttering a forged document in violation of Section 368(1). These offenses give rise to forfeiture under Canadian law.

If Gong's alleged criminal conduct had been committed in the United States, his conduct would arguably violate at least the following federal statutes: 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 2314 (interstate transportation of stolen property); and 18 U.S.C. §§ 1956, 1957 (money laundering) among other statutes, including securities law violations. The U.S. offenses listed above all give rise to forfeiture.[8]

     C.     In Accordance With the US' Treaty Obligations, this Court Should Act To Enforce The Canadian Restraining Orders By Executing A Seizure Order Pursuant To § 983(j)(1).

---

[8] *See* 18 U.S.C. § 981(a)(1)(C) (civil forfeiture of any property which constitutes, or is derived from, proceeds traceable to violations of § 1343, 2314); 18 U.S.C. § 982 (a)(1)(A) (criminal forfeiture of any property involved in §§ 1956, 1957); 18 U.S.C. 981(a)(1)(A) (civil forfeiture of any property involved in a transaction or attempted transaction in violation of §§ 1956, 1957); *see also* 28 U.S.C. § 2461 (modes of recovery for offenses authorizing criminal or civil forfeiture).

The December 19, 2017, restraining order entered by the Canadian court reflects the intention of Canada to seek the confiscation of his assets as a result of Gong's criminal conviction. Thus, the United States, acting in accordance with its treaty obligations, seeks to guarantee the effectiveness of any future confiscation order or judgment against Gong's assets located in the United States that are subject to confiscation in Canada.

Applying the language of § 2467(d)(3)(A) and structure under 18 U.S.C. § 983(j)(1)(A), this Court possesses the authority to issue an order—consistent with the Canadian restraining orders—to "preserve the availability of property . . . subject to forfeiture" for the duration of the Canadian confiscation proceeding. *See* 28 U.S.C. § 2467(d)(3)(A) (specifying that the district court may enter a restraining order at any time before or after the initiation of foreign forfeiture proceedings). As such, this Court should recognize the Canadian court's orders and enforce them according to their terms by restraining Gong's U.S.-based assets described in the orders.

## VI.   CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Court enforce the attached Canadian restraining orders, consistent with U.S. obligations under the bilateral treaty, by entering the attached proposed restraining order pursuant to this Court's authority under 28 U.S.C. §§ 2467(d)(3)(A), (d)(3)(B)(ii) and 18 U.S.C. § 983(j)(1)(A). The United States will promptly provide Gong with notice of this proceeding and a copy of both U.S. and Canadian restraining orders.

DEBORAH CONNOR, Acting Chief
Money Laundering and Asset Recovery Section

15

Criminal Division
United States Department of Justice


By: 

MARY K. BUTLER
Chief, International Unit
Mary.Butler@usdoj.gov
JENNIFER WALLIS
Trial Attorney
Jennifer.Wallis@usdoj.gov
U.S. Department of Justice
Criminal Division
Asset Forfeiture and Money Laundering Section
1400 New York Avenue, N.W., 10100
Washington, D.C. 20530
Telephone: (202) 514-1263

Attorneys for Applicant
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In Re: ENFORCEMENT OF A RESTRAINING    )
ORDER BY THE ONTARIO SUPERIOR COURT )
OF JUSTICE TO RESTRAIN THE FOLLOWING )
PROPERTIES OWNED OR CONTROLLED BY  )
XIAO HUA GONG IN THE UNITED STATES     )
INCLUDING:                             )
                                       )
                                       )        1:18-MC- _____
ANY OR ALL INTEREST IN REAL PROPERTY )
LOCATED AT 2001 NORTH DIVISION STREET )
(ROUTE 14) HARVARD, ILLINOIS           )
                                       )
ANY OR ALL INTEREST IN REAL PROPERTY )
LOCATED AT 600 TOWN CENTER DRIVE,      )
DEARBORN, MICHIGAN                     )
                                       )
ANY OR ALL INTEREST IN REAL PROPERTY )
LOCATED AT 55 EAST WASHINGTON,         )
CHICAGO, ILLINOIS on floors 2-12 and 23-40 )

[PROPOSED] **RESTRAINING ORDER**

This matter having come before this Court on the application of the United States of

America for a restraining order, pursuant to 28 U.S.C. § 2467(d)(3)(A), (d)(3)(B)(ii) and 18

U.S.C. § 983(j)(1), which provides U.S. district courts with jurisdiction to register and enforce

foreign restraining orders and take such other action in connection with any property or other

interest subject to forfeiture in a foreign proceeding to ensure its availability for forfeiture; and,

IT APPEARING TO THE COURT THAT:

WHEREAS, through the information provided to this Court in the Application by the

United States for Restraining Order pursuant to 28 U.S.C. § 2467(d)(3)(A), (d)(3)(B)(ii) and 18

U.S.C. §983(j)(1), asking for enforcement of three (3) Canadian restraining orders to preserve

any or all interest in the following real properties located at:

- 2001 North Division Street (Route 14), Harvard, Illinois (the "Harvard, Illinois

Property)

- 600 Town Center Drive, Dearborn, Michigan (the "Dearborn, Michigan

  Property")

- 55 East Washington, Chicago, Illinois on floors 2-12, and 23-40 (the "Chicago,

  Illinois Property").

a.    This Court has jurisdiction over the subject matter of this case;

b.    Pursuant to 28 U.S.C. §2467 (c)(2)(B), venue is appropriate in the United States
      District Court for the District of Columbia;

c.    The United States and Canada are parties to a Mutual Legal Assistance Treaty
      which entered into force on January 24, 1990. *Treaty Between the Government of
      the United States of America and the Government of Canada on Mutual Legal
      Assistance in Criminal Matters, U.S.-Can., March 18, 1985, S. Treaty Doc. No.
      100-14 (1990)*;

d.    The restraining orders issued by the Ontario Superior Court of Justice, Ontario,
      Canada, on December 19, 2017, establish that criminal proceedings are pending in
      Canada against the criminal defendants, Xiao Hua Gong and others, who were
      charged with various offenses under the Criminal Code of Canada in case no. 17-
      0365-MO.  The orders further provide that the above specified properties owned
      by Xiao Hua Gong in the United States are subject to forfeiture under Canadian
      law;

e.    The criminal conduct giving rise to forfeiture under Canadian law constitutes
      conduct that would give rise to forfeiture under 18 U.S.C. § 981(a)(1)(A) and 18
      U.S.C. § 981(a)(1)(C) or 28 U.S.C. § 2461(c), if committed in the United States;

f.    The Attorney General, in the interest of justice, has certified the attached
      Canadian restraining orders for enforcement against the captioned assets;

g.    The Canadian restraining orders appear to have been rendered under a system of
      law compatible with the requirements of due process;

h.    The Ontario Superior Court of Justice in Canada that entered the restraining
      orders appears to have jurisdiction over the subject matter; and

i.    There is no indication that the restraining orders issued by the Ontario Superior
      Court of Justice in Canada were obtained by fraud;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED,

2

PURSUANT TO 28 U.S.C. § 2467(d)(3)(A), (d)(3)(B)(ii) and 18 U.S.C. §983(j)(1), THAT:

1.    The restraining orders issued by the Ontario Superior Court of Justice, Canada, which are attached as Exhibit A-1, A-2, A-3 to this order, are hereby registered and enforced with this Court;

2.    The following properties are hereby RESTRAINED:

> 1) 2001 North Division Street (Route 14), Harvard, Illinois (the "Harvard, Illinois Property)
>
> 2) 600 Town Center Drive, Dearborn, Michigan (the "Dearborn, Michigan Property")
>
> 3) 55 East Washington, Chicago, Illinois on floors 2-12 and 23-40 (the "Chicago, Illinois Property")

3.    All persons, including the Canadian criminal defendants, Xiao Hua Gong, Edward Harvard Holdings, LLC, the owner of the Harvard, Illinois Property; 600 Town Center Realty, LLC, the owner of the Dearborn, Michigan Property; Jewelry Tower LLC, the owner of the Chicago, Illinois Property; and their agents, servants, employees, attorneys, family members and those persons in active concert or participation with them, and anyone holding any interest in the Properties,

> a.  be and are hereby ENJOINED AND RESTRAINED from transferring, selling, assigning, pledging, distributing, giving away, encumbering or otherwise participating in the disposal of or removal from the jurisdiction of this Court, without prior approval of this Court upon notice to the United States and an opportunity for the United States to be heard, except as specified in this Order or any future Orders entered by this Court;
>
> b.  shall not allow illegal activity to occur at any of the Business's locations;
>
> c.  are required to maintain the present condition of the properties, and ensure timely payment of all rents, insurance, utilities, taxes, and assessments, and adhere to all provisions of any applicable lease, until further order of this Court, and;
>
> d.  shall allow the Federal Bureau of Investigation or U.S. Marshal's Service to monitor compliance with this Order by all lawful means available.

5.    The terms of this Order shall remain in full force and effect until the Canadian criminal cases described above are concluded and any forfeiture judgments obtained therein have been presented for enforcement to this Court, or said Properties are sought by Canadian authorities to be released; and

6.  The United States shall make its best efforts to provide a copy of this Court's Order upon individuals and entities affected by this Order, and to anyone else known to the United States as holding a protected interest in the Properties;

7.  The United States may serve a copy of this Order on any affected financial institution by facsimile or electronic mail.

**SO ORDERED.**

Dated:

_____
UNITED STATES DISTRICT COURT JUDGE

4

# EXHIBIT A



**U.S. Department of Justice**

Criminal Division

*Washington, D.C. 20530*

## ASSISTANT ATTORNEY GENERAL DECISION

**DECISION:**

In accordance with 28 U.S.C. § 2467(b)(2), (d)(3)(B)(ii), and the Attorney General's delegation of authority to the Assistant Attorney General for the Criminal Division, Number 2820-2006, I hereby find that it is in the interest of justice to CERTIFY for enforcement the attached three restraining orders issued by the Ontario Superior Court of Canada in Case No. 17-0365-MO on December 19, 2017.

**John Cronan**
**Acting Assistant Attorney General**
**Criminal Division**

5·21-18
**Date**

# EXHIBIT A
# ATTACHMENT A-1

Court File No.:

MD 17-0365

## ONTARIO
## SUPERIOR COURT OF JUSTICE
### (Toronto Region)

THE HONOURABLE M          )          _Tues_          DAY, THE

                               )

JUSTICE  MC MAHon          )          _17_          DAY OF

                               )

                               )          _December_          , 2017

                               )

IN THE MATTER OF an Application by the Attorney General of Ontario pursuant to section 462.33 of the *Criminal Code of Canada* for an Order restraining certain property

B E T W E E N:

### HER MAJESTY THE QUEEN

Applicant

- and -

### EDWARD HARVARD HOLDINGS, LLC

Respondent

*(ex parte)*

_____

### RESTRAINT ORDER
### (Real Property – 2001 North Division Street (Route 14) Harvard IL, U.S.A.)

_____

UPON THE *EX PARTE* APPLICATION in writing by the Attorney General for Ontario for an order pursuant to section 462.33 of the *Criminal Code of Canada*.

AND UPON READING the Notice of Application and the Affidavit of Steven Han, peace officer, which affidavit accompanies the Application.

**AND UPON** the Attorney General for Ontario undertaking to pay any damages or costs that may be ordered by a court of competent jurisdiction in relation to the execution and making of this Order.

**AND UPON BEING SATISFIED** that there is no requirement of notice of this Application as giving notice would result in the disappearance, dissipation or reduction of value of the property sought to be restrained or otherwise affect the property so that all or part thereof could not be subject to an order of forfeiture under subsection 462.37(1) or 462.38(2) of the *Criminal Code of Canada*.

**AND UPON BEING SATISFIED** that there are reasonable grounds to believe that there exists property in respect of which an order of forfeiture may be made under subsection 462.37(1) or 462.38(2) of the *Criminal Code of Canada*, to wit:

Real Estate Property:

The land and commercial premises municipally known as: 2001 North Division Street (Route 14) Harvard, IL, U.S.A.; Permanent Real Estate Index Number 01-25-100-018 and 01-25-376-003; as more fully and completely legal description of the property containing in the Special Warranty Deed attached hereto and marked as Schedule "A".

(hereinafter referred "the **Real Estate Property**")

Insurable Interest

Any Insurable interest in the Real Estate Property including the right to receive the proceeds of insurance of any policies of insurance issued against the Real Estate Property.

(hereinafter referred "the **Insurable Interest**")

1.     **THIS COURT ORDERS** that all persons are prohibited from disposing of, or otherwise dealing with, in any manner whatsoever, any interest in the Real Estate Property, except as hereinafter provided.

2.     **THIS COURT FURTHER ORDERS** that no mortgage, hypothec, charge, conveyance of any interest or any other encumbrance whatsoever or agreement to mortgage, charge, hypothec or convey any interest may be entered into in respect of or registered against any of the real estate property except as may be permitted by further order of this Court or with the written consent of the Attorney General of Ontario, and any such mortgage, hypothec, charge, interest or any other encumbrance or agreement noted above shall be deemed void.

3.     'THIS COURT FURTHER ORDERS** that no writ of seizure and sale filed after the date of this order shall attach or bind any of the Real Estate Property without an order of a Justice of this Court.

4.     **THIS COURT FURTHER ORDERS** that the registered owners of the Real Estate Property (hereinafter the "owners") or lawful occupants of the Real Estate Property shall be permitted to continue to occupy the real estate property **PROVIDED THAT** the owners shall:

   a) maintain the Real Estate Property in a good state of repair and take all steps reasonably necessary to preserve the Real Estate Property and ensure that the Real Estate Property is insured against all common perils;

   b) within 14 days of service of this order upon the owners, provide the Director of Asset Management – Criminal, Ministry of the Attorney General, 720 Bay Street,

10th Floor, Toronto, Ontario, M7A 2S9, with a copy of any certificate of insurance or insurance policy in force in respect of the Real Estate Property.

5.     **THIS COURT FURTHER ORDERS** that the Director of Asset Management – Criminal, Ministry of the Attorney General of Ontario, may obtain any statements of account or proof of compliance with respect to: the obligations of the owners under the terms and covenants contained in any rules or other agreements, mortgages, charges or other encumbrance; municipal work orders and by-laws, provincial building code regulations and orders; realty and property taxes and all expenses for fees and utilities, including charges for hydro, water, sewage and gas, assessed or incurred in respect of the real estate property together with any arrears; and insurance premiums with respect to any policies of insurance issued against the Real Estate Property.

6.     **THIS COURT FURTHER ORDERS** that any person or service provider shall provide such statements as outlined in paragraph 5 of this Order, and/or proof of compliance without charge within ten days of a written request by the Director of Asset Management – Criminal, Ministry of the Attorney General of Ontario.

7.     **THIS COURT FURTHER ORDERS** that, if all or a portion of the Real Estate Property is the subject of a rental agreement as of the date of this order, then the owners of the Real Estate Property may continue to rent the Real Estate Property subject to the terms of the existing rental agreement, **PROVIDED THAT** there shall be no variation to any existing rental agreement, and no new rental agreement shall be entered into in respect of the Real Estate Property, except upon the written consent of the Attorney General for Ontario or his agent, or unless otherwise ordered by this Court after giving notice to the Attorney General for Ontario, and to any other interested person or

persons and after providing a reasonable opportunity for such persons to make submissions with respect to the intended variation or new agreement.

8.     **THIS COURT FURTHER ORDERS** that the Real Estate Property may be sold in accordance with the following procedure:

(a) Any offer to purchase any of the Real Estate Property shall be submitted to the Attorney General for Ontario by the owners or any other vendor before it is accepted by the owners or any other vendor;

(b) No offer to purchase the Real Estate Property may be accepted by the owners or any other vendor without the written consent of the Attorney General for Ontario. If the Attorney General for Ontario approves, the sale of the Real Estate Property may be completed, and the whole of the purchase price, less approved adjustments, the usual disbursements on a similar sale and any outstanding principal, interest, penalties or costs under any existing mortgage, charge or other encumbrance shall be paid to the Attorney General for Ontario and remain there until further order of this Court or a court of competent jurisdiction. If the offer is not approved by the Attorney General for Ontario or there is any disagreement with respect to the completion of the sale, a Justice of this Court, on application on three days notice to any interested party, may approve the sale and give such directions as are necessary to complete the sale. On such application, counsel for the Attorney General for Ontario, the purchaser, the owners, and any other vendor, shall be given a reasonable opportunity to make submissions, on their own or by counsel on their behalf, to this Court with respect to the offer to purchase or the completion of the sale;

(c) If the offer to purchase is approved by a Justice of this Court after the hearing of submissions by counsel for the Attorney General for Ontario, the purchaser, the owners, and any other vendor, on their own or by counsel on their behalf, the sale of the real estate property may be completed. Upon the completion of the sale the whole of the purchase price, less approved adjustments, the usual disbursements on a similar sale and any outstanding principal, interest, penalties or costs under any existing mortgage, charge or other encumbrance shall be paid to the Attorney General for Ontario and remain there until further order of this Court or a court of competent jurisdiction;

(d) After the completion of a sale in accordance with subparagraphs (b) or (c) above, the registration of the transfer with the consent of Her Majesty In Right of Ontario, and the registration of an Application to Amend (to delete this order) by the Attorney General for Ontario, this order shall cease to bind the property and the land registrar is authorized and directed to delete this order from title to the property.

9.     **THIS COURT FURTHER ORDERS** that no action, application or other proceedings shall be taken or continued against the Real Estate Property without the written consent of the Attorney General for Ontario or leave of this Court first being obtained, **PROVIDED THAT** this paragraph does not apply to any encumbrancer enforcing any rights arising out of the terms and conditions of any existing mortgage, charge or other encumbrance. In the event that any action, application or other proceeding is commenced by any encumbrancer, other than the Attorney General for

Ontario exercising rights under this Order, the Attorney General for Ontario shall be served in the manner set out in this Order. Nothing in this paragraph shall interfere with the rights of sale set out in this Order.

10.     **THIS COURT FURTHER ORDERS** that in the event of a claim being made by an insured on a policy of insurance issued against the real estate property, subject to the rights of any mortgagee arising out of a loss payable clause in any policy of insurance, the proceeds of insurance shall be paid into court and remain there until further order of this Court.

11.     **THIS COURT FURTHER ORDERS** that a copy of this order be served, in any manner provided for in the *Criminal Proceedings Rules*, upon the following persons:

a)  Edward Harvard Holdings, LLC – 600 Town Center, Dearborn, Michigan 48126, IL, U.S.A.;

b)  Xiao Hua Gong – 99 York Mills Road, Toronto, Ontario; and

c)  Xiao Hua Gong – 12A Park Lane Circle, Toronto, Ontario.

12.     **THIS COURT FURTHER ORDERS** that the Attorney General for Ontario or counsel instructed by him may, on three clear days notice to the Respondent, apply to a Judge of this Court for a variation, amendment to or addition of any term of this Order.

13.     **THIS COURT FURTHER ORDERS** that service of any documents or notices of any application on the Attorney General for Ontario may be served at the Crown Law Office – Criminal, 720 Bay Street, 10th Floor, Toronto, Ontario, M7A 2S9.

14.     THIS COURT FURTHER ORDERS that a copy of this order shall be registered against any property in accordance with the laws.

15.     FOR GREATER CERTAINTY, as provided by subsections 462.35(2) & (3) of the *Criminal Code of Canada,* this order may continue in force for a period or periods in excess of six months from the date of this order if proceedings are instituted in respect of which the restrained properties may be forfeited.

16.     NOTHING in this order prohibits the registration of a writ of execution by a party whose interest is already registered on title as of the date of this order providing that any sale, pursuant to such a writ, must be approved in accordance with paragraph 3.

Dated at the City of Toronto, Ontario, this     17 day of     December 2017.

_____

Justice
Ontario Superior Court of Justice

### *TAKE NOTICE*

Section 462.33(11) of the *Criminal Code of Canada* provides as follows:

> *Any person on whom an order under subsection (3) is served in accordance with this section and who while the order is in force, acts in contravention of or fails to comply with the order is guilty of an indictable offence or an offence punishable on summary conviction.*

Schedule "A"



*Joseph J. Tirio*
*McHenry County Recorder*

# CERTIFICATION

I, Joseph J. Tirio, Recorder for the County of McHenry, State of Illinois, do
hereby certify this to be a true and correct copy of Document Number
2016R0017947 recorded on May 26, 2016 in my office. In witness whereof,
I have set my hand and affixed the seal of my office.

DATE; June 14, 2017

*Joseph J. Tirio*                                              [seal]
*McHenry County Recorder*                      by_____
                                                               Clerk, Recorder's Office

Located at:  667 Ware Road, Woodstock, IL
Mailing Address:
2200 N. Seminary Avenue, Room 109
Woodstock, IL 60098
815-334-4110        fax 815-334-0276





*This document prepared by:*
Mark Nussbaum
Altman Schochet LLP
225 Broadway, 39th Floor
New York, NY 10007

After recording send to:
James R. Cambridge·
Kerr, Russell and Weber, PLC
500 Woodward Avenue, Suite 2500
Detroit, MI 48226

*Send subsequent tax bills to:*
Edward Harvard Holdings,
LLC at 600 Town Center,
Dearborn, Michigan 48126

PHYLLIS K. WALTERS
RECORDER-MCHENRY COUNTY, IL
**2016R0017947**
05/26/2016 02:05PM   PAGES   12
RECORDING FEE      34.00
GIS FEE            15.00
STATE STAMP FEE   9765.00
COUNTY STAMP FEE  4882.50
RHSPS HOUSING FEE  9.00



STATE OF ILLINOIS

MAY.26.16

MC HENRY COUNTY



**REAL ESTATE TRANSFER TAX**

1464750

FP351004

STATE & COUNTY
STATE TAX
# 000017535

## SPECIAL WARRANTY DEED

THIS INDENTURE, made and entered into as of this 20th day of May, 2016, by and between Optima Harvard Facility LLC, a Delaware Limited Liability Company, whose address is 200 South Biscayne boulevard, 55th floor, Miami, Florida 33131 ("*Grantor*") and Edward Harvard Holdings, LLC, an Illinois limited liability company whose address is 600 Town Center, Dearborn, Michigan 48126 ("*Grantee*").

WITNESSETH: That for and in consideration of Ten Dollars ($10.00), cash in hand paid, and other good and valuable·considerations, the receipt of all of which is hereby acknowledged, the Grantor has bargained and sold and does hereby bargain, sell, convey and confirm unto the Grantee the following described real estate, situated and being in the City of Harvard, County of McHenry State of Illinois:

For a complete description of the property, see Exhibit A attached hereto and made a part hereof.

This conveyance is made subject to·the items listed on Exhibit B attached hereto and made a part hereof.

TO HAVE AND TO HOLD the aforesaid real estate, together with all the appurtenances and hereditaments thereunto belonging or in any wise appertaining unto the Grantee,·its heirs, or successors and assigns in fee simple forever.

Grantor does hereby covenant with Grantee that it will warrant and forever defend the title and quiet possession·to the hereinabove described property against the lawful claims of all persons claiming by, through or under Grantor, but not further or otherwise.

FIDELITY NATIONAL TITLE 99902614
1 of 1

OAKLAND/505477.1

McHenry County Recorder  Phyllis K. Walters # 2016R0017947

Address of Property: 2001 North Division Street (Route 14) Harvard, IL 60033
Permanent Real Estate Index Number: 01-25-100-018 and 01-25-376-003

WITNESS the signature of the Grantor the day and year first above written.

Optima Harvard Facility LLC,
A Delaware Limited Liability Company
By: Optima Ventures LLC, sole member

STATE OF _Florida_ )
                    ) ss.
COUNTY OF _Dade_ )

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that Mordechai Korf personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act as such Managing Member of Optima Harvard Facility LLC, a Delaware Limited Liability Company for the uses and purposes therein set forth.

Given under my hand and official seal, this _20_ day of May, 2016.

_____
Notary Public

Commission expires _03/04/2020_

GALINA SHABARSHINA
MY COMMISSION # FF 961971
EXPIRES: March 4, 2020
Bonded Thru Notary Public Underwriters

Fidelity Natl Title Ins
20 N Clark St  Ste 220
Chicago IL 60602  (MT)

OAKLAND/505477.1

McHenry County Recorder  Phyllis K Walters # 2016R0017947

## EXHIBIT A

### Legal Description of Property

OAKLAND/505477.1

McHenry County Recorder Phyllis K. Walters # 2016R0017947

LEGAL DESCRIPTION:

PARCEL 1: THAT PART OF THE NORTH HALF OF THE NORTHWEST QUARTER OF SECTION 25, TOWNSHIP 46 NORTH, RANGE 5 EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS: COMMENCING AT THE POINT OF INTERSECTION OF THE CENTER LINE OF U.S. ROUTE 14 WITH A LINE DRAWN PARALLEL WITH AND 445.00 FEET NORTH OF THE SOUTH LINE OF THE NORTH HALF OF THE NORTHWEST QUARTER OF SAID SECTION 25; THENCE EAST ON THE LAST DESCRIBED LINE, A DISTANCE OF 1047.0 FEET TO A POINT; THENCE NORTH AT RIGHT ANGLES TO THE LAST DESCRIBED LINE, AT THE LAST DESCRIBED POINT, FOR A DISTANCE OF 208.0 FEET TO A POINT FOR A PLACE OF BEGINNING; THENCE CONTINUING NORTH ON THE LAST DESCRIBED LINE, FOR A DISTANCE OF 672.27 FEET TO A POINT ON THE NORTH LINE OF THE NORTH HALF OF THE NORTHWEST QUARTER OF SAID SECTION 25; THENCE WEST ON THE LAST DESCRIBED LINE, FOR A DISTANCE OF 616.58 FEET TO A POINT ON THE CENTER LINE OF SAID U.S. ROUTE 14; THENCE SOUTHWESTERLY ON THE CENTER LINE OF SAID U.S. ROUTE 14, FOR A DISTANCE OF 744.81 FEET TO A POINT, SAID POINT BEING ON A LINE DRAWN PARALLEL WITH AND 653.0 FEET NORTH OF THE SOUTH LINE OF THE NORTH HALF OF THE NORTHWEST QUARTER OF SAID SECTION 25; THENCE EAST ON THE LAST DESCRIBED LINE, FOR A DISTANCE OF 943.91 FEET TO THE PLACE OF BEGINNING, EXCEPT THEREFROM THAT PART CONVEYED TO THE STATE OF ILLINOIS, DEPARTMENT OF TRANSPORTATION, BY WARRANTY DEED RE CORDED JANUARY 17, 1995 AS DOCUMENT 95R001818, IN MCHE NRY COUNTY, ILLINOIS; ALSO EXCEPTING THAT PART CONVEYED TO THE CITY OF HARVARD, ILLINOIS FOR HARVARD HILLS ROAD AND CROWLEY ROAD BY CORPORATE QUIT CLAIM DEED FROM MOTOROLA, INC. RE CORDED JUNE 1, 1995 AS DOCUMENT 95R021061.

PARCEL 2: THAT PART OF THE NORTH HALF OF THE NORTHWEST QUARTER OF SECTION 25, TOWNSHIP 46 NORTH, RANGE 5 EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS: COMMENCING AT THE POINT OF INTERSECTION OF THE CENTER LINE OF U.S. HIGHWAY 14 WITH A LINE DRAWN PARALLEL WITH AND 445.0 FEE T NORTH OF THE SOUTH LINE OF THE NORTH HALF OF THE NORTHWEST QUARTER OF SAID SECTION 25 AND RU NNING THE NCE EAST ALONG SAID LAST DESCRIBED LINE, A DISTANCE OF 1047.0 FEE T TO A POINT; THE NCE NORTH AT RIGHT ANGLES TO SAID LAST DESCRIBED COURSE, A DISTANCE OF 208.0 FEE T TO A POINT; THE NCE WEST AT RIGHT ANGLES TO THE LAST DESCRIBED COURSE, TO A POINT ON THE CENTER LINE OF SAID U.S. HIGHWAY 14; THENCE SOUTHER LY ALONG THE CENTER LINE OF SAID U.S. HIGHWAY 14 TO THE PLACE OF BEGINNING, EXCEPT THEREFROM THAT PART CONVEYED TO THE STATE OF ILLINOIS, DEPARTMENT OF TRANSPORTATION, BY WARRANTY DEED RE CORDED JANUARY 17, 1995 AS DOCUMENT 95R001818, IN MCHE NRY COUNTY, ILLINOIS. ALSO

PARCEL 3: THAT PART OF THE WEST HALF OF THE NORTHE AST QUARTER AND THAT PART OF THE NORTHWEST QUARTER OF SECTION 25, TOWNSHIP 46 NORTH, RANGE 5 EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS: BEGINNING AT THE NORTHE AST CORNER OF THE WEST HALF OF THE NORTHE AST QUARTER OF SAID SECTION 25 AND RU NNING THE NCE SOUTH ON THE EAST LINE THERE OF, FOR A DISTANCE OF 863.35 FEE T TO A POINT; THE NCE WESTERLY ON A LINE FORMING AN ANGLE OF 89 DEGREE S, 22 MINUTES, 51 SECONDS TO THE RIGHT, WITH A PROLONGATION OF THE LAST DESCRIBED LINE, AT THE LAST DESCRIBED POINT, FOR A DISTANCE OF 680.67 FEE T TO A POINT; THE NCE WESTERLY IN A STRAIGHT AND DIRE CT LINE, FOR A DISTANCE OF 2103.56 FEE T TO A POINT ON A LINE DRAWN 445 FEE T NORTH OF AND PARALLEL WITH THE SOUTH LINE OF THE NORTH HALF OF THE

NORTHWEST QUARTER OF SAID SECTION 25, SAID POINT BEING 1047 FEE T EAST OF THE CENTER LINE OF U.S. ROU TE 14 AS MEASURE D ALONG THE LAST DESCRIBED PARALLEL LINE; THE NCE NORTH AT RIGHT ANGLES TO THE LAST DESCRIBED LINE, AT THE LAST DESCRIBED POINT, FOR A DISTANCE OF 880.27 FEE T TO A POINT ON THE NORTH LINE OF THE NORTHWEST QUARTER OF SAID SECTION 25; THE NCE EAST ON THE NORTH LINE THERE OF, FOR A DISTANCE OF 1462.88 FEE T TO THE NORTHE AST CORNER THERE OF; THE NCE EAST ON THE NORTH LINE OF THE WEST HALF OF THE NORTHE AST QUARTER OF SAID SECTION 25, FOR A DISTANCE OF 1319.85 FEE T TO THE PLACE OF BEGINNING, EXCEPT THERE FROM THAT PART CONVEYED TO THE STATE OF ILLINOIS, DEPARTMENT OF TRANSPORTATION, BY WARRANTY DEED RE CORDED JANUARY 17, 1995 AS DOCUMENT NO. 95R001818; ALSO EXCEPTING THAT PART CONVEYED TO THE  CITY OF HARVARD, ILLINOIS FOR HARVARD HILLS ROAD AND CROWLEY ROAD BY CORPORATE QUIT CLAIM DEED FROM MOTORO LA, INC. RE CORDED JUNE 1, 1995 AS DOCUMENT 95R021061, IN MCHE NRY COUNTY, ILLINOIS.

PARCEL 4; PART OF THE NORTHWEST QUARTER OF THE NORTHE AST QUARTER OF SECTION 25,TOWNSHIP 46 NORTH, RANGE 5 EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS:. COMMENCING AT THE NORTHE AST CORNER OF SAID NORTHWEST QUARTER OF THE NORTHE AST QUARTER; THE NCE SOUTHER LY ALONG THE EAST LINE OF SAID NORTHWEST QUARTER, A DISTANCE OF 863.35 FEE T-FOR THE PLACE OF BEGINNING; THE NCE CONTINUING SOUTHER LY ALONG SAID EAST LINE, A DISTANCE OF 320.0 FEE T; THE NCE WESTERLY PARALLEL WITH THE NORTH LINE OF SAID NORTHWEST QUARTER, A DISTANCE OF 680.67 FEE T; THE NCE NORTHER LY PARALLEL WITH THE EAST LINE OF SAID NORTHWEST QUARTER, A DISTANCE OF 320.0 FEE T; THE NCE EASTERLY PARALLEL WITH THE NORTH LINE OF SAID NORTHWEST QUARTER, A DISTANCE OF 680.67 FEE T TO THE PLACE OF BEGINNING, IN MCHE NRY COUNTY, ILLINOIS; ALSO EXCEPTING THAT PART CONVEYED TO THE CITY OF HARVARD, ILLINOIS FOR HARVARD HILLS ROAD BY CORPORATE QUIT CLAIM DEED FROM MOTORO LA, INC. RE CORDED JUNE 1, 1995 AS DOCUMENT 95R021061.

PARCEL 5: THAT PART OF THE WEST HALF OF THE NORTHE AST QUARTER AND THAT PART OF THE NORTHWEST QUARTER OF SECTION 25, TOWNSHIP 46 NORTH, RANGE 5 EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS: COMMENCING AT THE NORTHE AST CORNER OF THE WEST HALF OF THE NORTHE AST QUARTER OF SAID SECTION 25 AND RU NNING THE NCE SOUTH ON THE EAST LINE THERE OF, FOR A DISTANCE OF 1183.35 FEE T TO A POINT FOR THE PLACE OF BEGINNING; THE NCE WESTERLY ON A LINE FORMING AN ANGLE OF 89 DEGREE S, 22 MINUTES, 51 SECONDS TO THE RIGHT, WITH A PROLONGATION OF THE LAST DESCRIBED LINE, AT THE LAST DESCRIBED POINT, FOR A DISTANCE OF 680.67 FEE T TO A POINT; THE NCE NORTH PARALLEL WITH THE EAST LINE OF THE WEST HALF OF THE NORTHE AST QUARTER OF SAID SECTION 25, FOR A DISTANCE OF 320 FEE T TO A POINT; THE NCE WESTERLY IN A STRAIGHT AND DIRE CT LINE, FOR A DISTANCE OF 2103.56 FEE T TO A POINT ON A LINE DRAWN 445 FEE T NORTH OF AND PARALLEL WITH THE SOUTH LINE OF THE NORTH HALF OF THE NORTHWEST QUARTER OF SAID SECTION 25, SAID POINT BEING 1047 FEE T.EAST OF THE CENTER LINE OF U.S. ROU TE 14 AS MEASURE D ALONG THE LAST DESCRIBED PARALLEL LINE; THE NCE WEST ON THE LAST DESCRIBED LINE, FOR A DISTANCE OF

1179.40 FEE T TO A POINT ON THE WEST LINE OF THE NORTHWEST QUARTER OF SAID SECTION 25;  THE NCE SOUTH ON THE WEST LINE THERE OF, FOR A DISTANCE OF 1768.25 FEE T TO THE SOUTHWEST

CORNER THERE OF; THE NCE EAST ON THE SOUTH LINE THERE OF, FOR A DISTANCE OF 2645.07 FEE T TO THE SOUTHE AST CORNER THERE OF; THE NCE EAST ON THE SOUTH LINE OF THE WEST HALF OF THE NORTHE AST QUARTER OF SAID SECTION 25, FOR A DISTANCE OF 1318.35 FEE T TO THE SOUTHE AST CORNER THERE OF; THE NCE NORTH ON THE EAST LINE THERE OF, FOR A DISTANCE OF 1455.54 FEE T TO THE PLACE OF BEGINNING, (EXCEPTING THERE-FROM THAT PART THERE OF LYING WESTERLY OF THE CENTER LINE OF U.S. ROU TE 14), AND EXCEPTING THEREFROM THAT PART CONVEYED TO THE STATE OF ILLINOIS, DEPARTMENT OF TRANSPORTATION, BY WARRANTY DEED RE CORDED JANUARY 17, 1995 AS DOCUMENT 95R001818, IN MCHE NRY COUNTY, ILLINOIS; ALSO  EXCEPTING THAT PART CONVEYED.TO THE CITY OF HARVARD, ILLINOIS FOR HARVARD HILLS ROAD BY CORPORATE QUIT CLAIM DEED FROM MOTORO LA, INC. RE CORDED JUNE 1, 1995 AS DOCUMENT 95R021061.

PARCEL 6: THE NORTHE AST 1/ 4 OF THE SOUTHWEST 1/ 4 OF SECTION 25, TOWNSHIP 46 NORTH, RANGE 5 EAST OF THE THIRD PRINCIPAL MERIDIAN, ALSO THE NORTH 548.65 FEE T OF THE SOUTHE AST 1/ 4 OF THE SOUTHWEST 1/ 4 OF SECTION 25 , TOWNSHIP 46 NORTH, RANGE 5 EAST OF THE THIRD PRINCIPAL MERIDIAN, EXCEPTING FROM THE AFORESAID TAKEN AS A TRACT THAT PART LYING EASTERLY OF THE WESTERLY RIGHT OF WAY LINE OF HARVARD HILLS ROAD, CONVEYED TO THE CITY OF HARVARD BY CORPORATE QUIT CLAIM DEED FROM MOTORO LA, INC. RE CORDED JUNE 1, 1995 AS DOCUMENT 95R021061, ALL IN-MCHE NRY COUNTY, ILLINOIS.

PARCEL 7: THAT PART OF THE NORTHWEST QUARTER OF THE SOUTHE AST QUARTER OF SECTION 25, TOWNSHIP 46 NORTH, RANGE 5 EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING NORTH AND WEST OF HARVARD HILLS ROAD, AS SAID HARVARD HILLS ROAD WAS CONVEYED TO THE CITY OF HARVARD, ILLINOIS, BY CORPORATE QUIT CLAIM DEED FROM MOTORO LA, INC., RE CORDED JUNE 1, 1995 AS DOCUMENT NUMBER 95R021061, IN MCHE NRY COUNTY, ILLINOIS.

## EXHIBIT B

### Permitted Exceptions

# PERMITTED EXCEPTIONS

1.    Intentionally Deleted:

2.    { Intentionally Deleted.

3.    Intentionally Deleted,

4.    Terms and provisions contained in City of Harvard Ordinance #94-123 annexing the land to the City of Harvard recorded August 22, 1994 as document 94R049515.

5.    Rights of the public, the State of Illinois and the municipality in and to that part of the land, if any, taken or used for road purposes.

6.    Rights of way for existing drainage tiles, ditches, feeders, laterals and underground pipes, if any.

7.    Easement in favor of Illinois Northern Utilities Company, and its/their respective successors and assigns, to install, operate and maintain all equipment necessary for the purpose of serving the land and other property, together with the right of access to said equipment, and the provisions relating thereto, contained in the grant recorded April 16, 1931 in Book 16 of Miscellaneous Records, Page 246.

8.    Easement in favor of Northern Illinois Gas Company, its successors and assigns, to lay, maintain, operate, renew, and remove gas mains and other necessary facilities, granted by instrument recorded November 18, 1976 as document 679930, and the further terms and provisions contained therein.

9.    Rights of Northern Illinois Gas Company, its successors and assigns, to lay, maintain, operate, renew, and remove gas mains and other necessary facilities over part of the West 1/2 of the Northwest 1/4 of Section 25, Township 46 North, Range 5 East of the Third Principal Meridian, lying between the center line of Route 14 and a line drawn 10 feet East of the East right of way line with right of access thereto under and by virtue of the permit recorded November 18, 1976 as document 679930, and the provisions therein contained.

[continued on following page]

10. Permit recorded April 16, 1931 in Book 16 of Miscellaneous Records, Page 249 in favor of Illinois Northern Utilities Company, a corporation of Illinois, its successors and assigns of the right to place and maintain its poles, wires and necessary fixtures, with the right of access to the same for the maintaining thereof and to operate an electric transmission line upon and over the same; also to trim or cut such saplings and trees as may be necessary for the proper construction operation and maintenance of said poles, wires and necessary fixtures upon and over the east side of the highway that passes through grantor's property in the Northwest Quarter of the Northwest · Quarter of Section 25 aforesaid.

11. Rights of the public, the State of Illinois and the municipality in and to so much of the land acquired for road purposes by instrument recorded June 22, 1923 in Book 7 of Miscellaneous Records, Page 194 and by instrument recorded June 22, 1923 in Book 7 of Miscellaneous Records, Page 226.

12. Notice by the State of Illinois Department of Public Works and Buildings of an order establishing a freeway by instrument recorded August 16, 1957 as document 327120 and the provisions contained in said instrument.

Note: Second amendment to the order establishing a freeway providing notice that a portion of the freeway described in the aforementioned order is rescinded, recorded September 22, 1995 as document 95R040311.

13. Rights of Northern Illinois Gas Company, its successors and assigns, to lay, maintain, operate, renew, and remove gas mains and other necessary facilities over that part of the land falling within U.S. Route 14 and within a 10 foot strip lying Easterly of the Easterly right of way line of said Route 14 with right of access thereto under and by virtue of the permit recorded January 6, 1977 as document 683871, and the provisions therein contained.

14. Easement for pole and electric line in favor of Illinois Northern Utilities Company, its successors and/or assigns, as disclosed by unrecorded grant attached to letter from Commonwealth Edison dated June 17, 1994, said grants being dated November 5, 1947 and October 31, 1947, for the side of the highway that forms the east boundary line of the land.

15. Easement in favor of Illinois Northern Utilities Company, and its/their respective successors and assigns, to install, operate and maintain all equipment necessary for the purpose of serving the land and other property, together with the right of access to said equipment, and the provisions relating thereto contained in the grant recorded in Book 16 of Miscellaneous Records, Page 251, affecting part of the Southwest Quarter of the Northwest Quarter of Section 25, Township 46 North, Range 5 East of the Third Principal Meridian and other land.

16. Rights of the public, the State of Illinois and the municipality in and to so much of the land acquired for road purposes by instrument recorded May 8, 1967 as document 472321.

17. Motorola, Inc. Wetland Deed Restriction/Covenant to U.S. Army Corps of Engineers dated April 11, 2003 and recorded May 16, 2003 as document 2003R0064557, and the terms and provisions contained therein, as amended by instrument recorded April 21, 2005 as document 2005R0030512.

18. Existing unrecorded leases, if any, and rights of parties in possession under such unrecorded leases.

(Easements)

1. Underground Electric Line(s) Easement dated January 28, 1995 made by Robert Anderson and Connie Anderson in favor of Motorola, recorded in the office of the Recorder of Deeds of McHenry County, Illinois on March 28, 1995 as Document No. 95R 010889.

2. Overhead and Underground Electric Line(s) Easement dated January 28, 1995 made by Gordon J. Polyock and Jeannette H. Polyock in favor of Motorola, recorded in the office of the Recorder of Deeds of McHenry County, Illinois on March 28, 1995 as Document No. 95R 010890.

3. Underground Electric Line(s) Easement dated January 28, 1995 made by Alan E. Feragen and Gayle M. Feragen in favor of Motorola, recorded in the office of the Recorder of Deeds of McHenry County, Illinois on March 28, 1995 as Document No. 95R 010891.

4. Underground Electric Line(s) Easement dated January 28, 1995 made by Peter Ciocchetti and Caterina Ciocchetti in favor of Motorola, recorded in the office of the Recorder of Deeds of McHenry County, Illinois on March 28, 1995 as Document No. 95R 010892.

5. Underground Electric Line(s) Easement dated January 28, 1995 made by Robert J. Raupp and Barbara A./ Raupp in favor of Motorola, recorded in the office of the Recorder of Deeds of McHenry County, Illinois on March 28, 1995 as Document No. 95R 010893.

6. Overhead and Underground Electric Line(s) Easement dated February 11, 1995 made by Man Jong Park a/k/a Man Jang Park and Yuk Bin Park in favor of Motorola, recorded in the office of the Recorder of Deeds of McHenry County, Illinois on March 28, 1995 as Document No. 95R 010894.

7. Overhead and Underground Electric Line(s) Easement dated February 7, 1995 made by Patrick R. Fritz and Dawn M. Fritz in favor of Motorola, recorded in the office of the Recorder of Deeds of McHenry County, Illinois on March 28, 1995 as Document No. 95R 010895.

8. Underground Electric Line(s) Easement dated March 1, 1995 made by Ronald Benacli in favor of Motorola, recorded in the office of the Recorder of Deeds of McHenry County, Illinois on March 28, 1995 as Document No. 95R 010896.

Court File No.:

## ONTARIO
## SUPERIOR COURT OF JUSTICE
### (Toronto Region)

IN THE MATTER OF an Application by the Attorney General of Ontario pursuant to section 462.33 of the *Criminal Code of Canada* for an Order restraining certain property

B E T W E E N:

### HER MAJESTY THE QUEEN

Applicant

- and -

### EDWARD HARVARD HOLDINGS, LLC

Respondent
*(ex parte)*

---

### RESTRAINT ORDER
(Real Property -- 2001 North Division Street (Route 14) Harvard IL, U.S.A.)

---

Susan Ficek
Counsel for the Applicant
Ministry of the Attorney General
Crown Law Office -- Criminal
10th Floor, 720 Bay Street
Toronto, Ontario
M7A 2S9
Phone: (416) 326-4583
Fax: (416) 326-4656
Email: susan.ficek@ontario.ca

# EXHIBIT A
# ATTACHMENT A-2

Court File No.: 17-0365-MO

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(Toronto Region)**

THE HONOURABLE M )      _Tues_      DAY, THE
)
JUSTICE  MCMAHON )      _19_       DAY OF
)
)      _December_     , 2017
)

IN THE MATTER OF an Application by the Attorney General of Ontario
pursuant to section 462.33 of the *Criminal Code of Canada* for an Order
restraining certain property

B E T W E E N:

HER MAJESTY THE QUEEN

Applicant

- and -

EDWARD HARVARD HOLDINGS, LLC
and 600 TOWN CENTER REALTY LLC

Respondents
(*ex parte*)

_____

**RESTRAINT ORDER**
**(Real Property – 600 Town Center Drive, Dearborn, Michigan, U.S.A.)**

_____

UPON THE *EX PARTE* APPLICATION in writing by the Attorney General for Ontario
for an order pursuant to section 462.33 of the *Criminal Code of Canada*.

AND UPON READING the Notice of Application and the Affidavit of Steven Han,
peace officer, which affidavit accompanies the Application.

AND UPON the Attorney General for Ontario undertaking to pay any damages or costs that may be ordered by a court of competent jurisdiction in relation to the execution and making of this Order.

AND UPON BEING SATISFIED that there is no requirement of notice of this Application as giving notice would result in the disappearance, dissipation or reduction of value of the property sought to be restrained or otherwise affect the property so that all or part thereof could not be subject to an order of forfeiture under subsection 462.37(1) or 462.38(2) of the *Criminal Code of Canada*.

AND UPON BEING SATISFIED that there are reasonable grounds to believe that there exists property in respect of which an order of forfeiture may be made under subsection 462.37(1) or 462.38(2) of the *Criminal Code of Canada*, to wit:

Real Estate Property:

The land and commercial premises municipally known as: 600 Town Centre Drive, Dearborn, Michigan 48126, U.S.A.; Tax Parcel Number 82-09-232-01-003; as more fully and completely legal description of the property containing in the Warranty Deed attached hereto and marked as Schedule "A".

(hereinafter referred "the Real Estate Property")

Insurable Interest

Any Insurable interest in the Real Estate Property including the right to receive the proceeds of insurance of any policies of insurance issued against the Real Estate Property.

(hereinafter referred "the Insurable Interest")

1.   **THIS COURT ORDERS** that all persons are prohibited from disposing of, or otherwise dealing with, in any manner whatsoever, any interest in the Real Estate Property, except as hereinafter provided.

2.   **THIS COURT FURTHER ORDERS** that no mortgage, hypothec, charge, conveyance of any interest or any other encumbrance whatsoever or agreement to mortgage, charge, hypothec or convey any interest may be entered into in respect of or registered against any of the real estate property except as may be permitted by further order of this Court or with the written consent of the Attorney General of Ontario, and any such mortgage, hypothec, charge, interest or any other encumbrance or agreement noted above shall be deemed void.

3.   **THIS COURT FURTHER ORDERS** that no writ of seizure and sale filed after the date of this order shall attach or bind any of the Real Estate Property without an order of a Justice of this Court.

4.   **THIS COURT FURTHER ORDERS** that the registered owners of the Real Estate Property (hereinafter the "owners") or lawful occupants of the Real Estate Property shall be permitted to continue to occupy the real estate property **PROVIDED THAT** the owners shall:

   a) maintain the Real Estate Property in a good state of repair and take all steps reasonably necessary to preserve the Real Estate Property and ensure that the Real Estate Property is insured against all common perils;

   b) within 14 days of service of this order upon the owners, provide the Director of Asset Management – Criminal, Ministry of the Attorney General, 720 Bay Street,

10th Floor, Toronto, Ontario, M7A 2S9, with a copy of any certificate of insurance or insurance policy in force in respect of the Real Estate Property.

5.      **THIS COURT FURTHER ORDERS** that the Director of Asset Management – Criminal, Ministry of the Attorney General of Ontario, may obtain any statements of account or proof of compliance with respect to: the obligations of the owners under the terms and covenants contained in any rules or other agreements, mortgages, charges or other encumbrance; municipal work orders and by-laws, provincial building code regulations and orders; realty and property taxes and all expenses for fees and utilities, including charges for hydro, water, sewage and gas, assessed or incurred in respect of the real estate property together with any arrears; and insurance premiums with respect to any policies of insurance issued against the Real Estate Property.

6.      **THIS COURT FURTHER ORDERS** that any person or service provider shall provide such statements as outlined in paragraph 5 of this Order, and/or proof of compliance without charge within ten days of a written request by the Director of Asset Management – Criminal, Ministry of the Attorney General of Ontario.

7.      **THIS COURT FURTHER ORDERS** that, if all or a portion of the Real Estate Property is the subject of a rental agreement as of the date of this order, then the owners of the Real Estate Property may continue to rent the Real Estate Property subject to the terms of the existing rental agreement, **PROVIDED THAT** there shall be no variation to any existing rental agreement, and no new rental agreement shall be entered into in respect of the Real Estate Property, except upon the written consent of the Attorney General for Ontario or his agent, or unless otherwise ordered by this Court after giving notice to the Attorney General for Ontario, and to any other interested person or

persons and after providing a reasonable opportunity for such persons to make submissions with respect to the intended variation or new agreement.

8.     **THIS COURT FURTHER ORDERS** that the Real Estate Property may be sold in accordance with the following procedure:

(a) Any offer to purchase any of the Real Estate Property shall be submitted to the Attorney General for Ontario by the owners or any other vendor before it is accepted by the owners or any other vendor;

(b) No offer to purchase the Real Estate Property may be accepted by the owners or any other vendor without the written consent of the Attorney General for Ontario. If the Attorney General for Ontario approves, the sale of the Real Estate Property may be completed, and the whole of the purchase price, less approved adjustments, the usual disbursements on a similar sale and any outstanding principal, interest, penalties or costs under any existing mortgage, charge or other encumbrance shall be paid to the Attorney General for Ontario and remain there until further order of this Court or a court of competent jurisdiction. If the offer is not approved by the Attorney General for Ontario or there is any disagreement with respect to the completion of the sale, a Justice of this Court, on application on three days notice to any interested party, may approve the sale and give such directions as are necessary to complete the sale. On such application, counsel for the Attorney General for Ontario, the purchaser, the owners, and any other vendor, shall be given a reasonable opportunity to make submissions, on their own or by counsel on their behalf, to this Court with respect to the offer to purchase or the completion of the sale;

(c) If the offer to purchase is approved by a Justice of this Court after the hearing of submissions by counsel for the Attorney General for Ontario, the purchaser, the owners, and any other vendor, on their own or by counsel on their behalf, the sale of the real estate property may be completed. Upon the completion of the sale the whole of the purchase price, less approved adjustments, the usual disbursements on a similar sale and any outstanding principal, interest, penalties or costs under any existing mortgage, charge or other encumbrance shall be paid to the Attorney General for Ontario and remain there until further order of this Court or a court of competent jurisdiction;

(d) After the completion of a sale in accordance with subparagraphs (b) or (c) above, the registration of the transfer with the consent of Her Majesty In Right of Ontario, and the registration of an Application to Amend (to delete this order) by the Attorney General for Ontario, this order shall cease to bind the property and the land registrar is authorized and directed to delete this order from title to the property.

9.      **THIS COURT FURTHER ORDERS** that no action, application · or other proceedings shall be taken or continued against the Real Estate Property without the written consent of the Attorney General for Ontario or leave of this Court first being obtained, **PROVIDED THAT** this paragraph does not apply to any encumbrancer enforcing any rights arising out of the terms and conditions of any existing mortgage, charge or other encumbrance. In the event that any action, application or other proceeding is commenced by any encumbrancer, other than the Attorney General for

Ontario exercising rights under this Order, the Attorney General for Ontario shall be served in the manner set out in this Order.  Nothing in this paragraph shall interfere with the rights of sale set out in this Order.

10.     **THIS COURT FURTHER ORDERS** that in the event of a claim being made by an insured on a policy of insurance issued against the real estate property, subject to the rights of any mortgagee arising out of a loss payable clause in any policy of insurance, the proceeds of insurance shall be paid into court and remain there until further order of this Court.

11.     **THIS COURT FURTHER ORDERS** that a copy of this order be served, in any manner provided for in the *Criminal Proceedings Rules*, upon the following persons:

   a)  Edward Harvard Holdings, LLC – 600 Town Center, Dearborn, Michigan 48126, IL, U.S.A.;

   b)  600 Town Centre Realty LLC – 185 Yorkland Boulevard, Toronto, Ontario;

   c)  Xiao Hun Gong – 185 Yorkland Boulevard, Toronto, Ontario;

   d)  Xiao Hun Gong – 99 York Mills Road, Toronto, Ontario; and

   e)  Xiao Hun Gong – 12A Park Lane Circle, Toronto, Ontario.

12.     **THIS COURT FURTHER ORDERS** that the Attorney General for Ontario or counsel instructed by him may, on three clear days notice to the Respondent, apply to a Judge of this Court for a variation, amendment to or addition of any term of this Order.

13.     **THIS COURT FURTHER ORDERS** that service of any documents or notices of any application on the Attorney General for Ontario may be served at the Crown Law Office – Criminal, 720 Bay Street, 10th Floor, Toronto, Ontario, M7A 2S9.

14.     **THIS COURT FURTHER ORDERS** that a copy of this order shall be registered against any property in accordance with the laws.

15.     **FOR GREATER CERTAINTY,** as provided by subsections 462.35(2) & (3) of the *Criminal Code*, this order may continue in force for a period or periods in excess of six months from the date of this order if proceedings are instituted in respect of which the restrained properties may be forfeited.

16.     **NOTHING** in this order prohibits the registration of a writ of execution by a party whose interest is already registered on title as of the date of this order providing that any sale, pursuant to such a writ, must be approved in accordance with paragraph 3.

Dated at the City of Toronto, Ontario, this    *19*  day of *Dec emb er* 2017.

                                                           _____
                                                           Justice
                                                           Ontario Superior Court of Justice

*TAKE NOTICE*

Section 462.33(11) of the *Criminal Code of Canada* provides as follows:

> *Any person on whom an order under subsection (3) is served in accordance with this section and who while the order is in force, acts in contravention of or fails to*

Restraint Order – **Page 9**

comply with the order is guilty of an indictable offence or an offence punishable on summary conviction.

Schedule "A"

**2016 JAN 21   PM 3: 38**

Bernard J. Youngblood
Wayne County  Register of Deeds
2016033250
01/21/2016 03:38 PM   L: 52686 P: 1464
                      UO         Total Pages: 4

### WARRANTY DEED

On January 14, 2016, ROYAL REALTY, LLC, a Michigan Limited Liability Company, whose address is 600 Town Centre Drive, Dearborn, Michigan 48126 (Grantor), conveys and warrants to 600 TOWN CENTER REALTY LLC, whose address is 185 Yorkland Blvd., North York, Ontario M214R2 (Grantee), the real property commonly known as 600 Town Centre Drive, Dearborn, Michigan 48126, and described on Exhibit A (the Premises)

for **Twenty Million ($20,000,000.00) Dollars**

Subject to any easements and building and use restrictions of record and the lien of taxes not yet due and payable.

Grantors grants to Grantee the right to make all divisions under Section 108 of the Land Division Act, Act No. 288 of the Public Acts of 1967. This property may be located within the vicinity of farmland or a farm operation. Generally accepted agricultural and management practices which may generate noise, dust, odors, and other associated conditions may be used and protected by the Michigan Right to Farm Act.

[Signature and notary jurat appear on the following page]

MICHIGAN REAL ESTATE TRANSFER TAX
   Wayne County  Tax Stamp #394332
         01/21/2016

Receipt# 16-30725  L: 52686 P: 1464
State Tax: $150000.00 County Tax: $22000.00

726910BH

2016033250    Page 2 of 4

Dated: January 14, 2016

Royal Realties, LLC :

By: _____
    Sidney Elhadad
Its:   Manager

STATE OF MICHIGAN      )
COUNTY OF OAKLAND      )

The foregoing instrument was acknowledged before me on January 14, 2016 by Sidney Elhadad, a manager of Royal Realties, LLC, a Michigan limited liability company, on behalf of the Limited Liability Company.

_____
WILLIAM VITALE
Notary Public, State of Michigan
My Commission expires ___8/23___, 2018
Acting in the County of ___Oakland___

Drafted by:
Eric J. Gould, Esq.
26862 Woodward Avenue, Suite 200
Royal Oak, MI 48067

When recorded return to and Send subsequent tax bills to:
Xian Hun Gong
185 Yorkland Blvd.
North York, Ontario M214R2
CANADA

Recording Fee:                         Transfer Tax:
                                       STATE: $150,000.00
                                       COUNTY: $22,000.00

2016033250    Page 3 of 4

## EXHIBIT A

### REAL PROPERTY

Real property in the City of Dearborn, County of Wayne, State of Michigan, described as follows:

Parcel of land being Lot 14 and part of Lot 13, part of Lot 15, part of Lot 16, and part of Lot 17 of Fairlane Town Center, a subdivision of part of the Southeast 1/4 of Fractional Section 14, Town 2 South, Range 10 East, and part of Private Claims 317 and 318, and Private Claims 662 and 663, City of Dearborn, Wayne County, Michigan, recorded in Liber 96, Pages 29 through 46, Wayne County Records, and more particularly described as: Beginning at the lot common to Lots 14 and 15 and the Northerly line of Southfield Freeway and Michigan Avenue Interchange; thence South 60 degrees 30 minutes 49 seconds West, 237.84 feet along a line common to Lot 15 and the Northerly line of Southfield Freeway and Michigan Avenue Interchange; thence South 78 degrees 52 minutes 34 seconds West, 307.92 feet along a line common to Lot 15 and the Northerly line of Southfield Freeway and Michigan Avenue Interchange; thence North 02 degrees 15 minutes 58 seconds West, 290.96 feet to a point on a line common to Lots 15 and 16; thence North 26 degrees 54 minutes 30 seconds East, 61.00 feet along a line common to Lots 15 and 16, to a point of curve; thence Northeasterly along a line common to Lots 15 and 16, and the arc of a curve to the right 72.99 feet, said curve having a radius of 75.00 feet, central angle 55 degrees 45 minutes 37 seconds and a chord bearing and distance North 54 degrees 47 minutes 18 seconds East, 70.14 feet; thence North 01 degree 58 minutes 34 seconds West, 245.30 feet parallel with the line common to Lots 14 and 16; thence North 46 degrees 58 minutes 34 seconds West, 611.29 feet parallel with the line common to Lots 14 and 17, to a point on a curve, said point being on the outside perimeter of Town Center Drive, 55.00 feet wide; thence Easterly along the outside perimeter of Town Center Drive, 55.00 feet wide and the arc of a curve to the left, 88.47 feet to a point on a curve, and also the lot corner common to Lots 14 and 17, said curve having a radius of 827.61 feet, central angle of 06 degrees 07 minutes 30 seconds and chord bearing and distance North 66 degrees 40 minutes 54 seconds East, 88.43 feet; thence continuing along the outside perimeter of Town Center Drive 55.00 feet wide and the arc of a curve to the left, 216.70 feet to a point on a curve, said curve having a radius of 827.61 feet, central angle 15 degrees 00 minutes 08 seconds, and a chord bearing and distance North 56 degrees 07 minutes 07 seconds East, 216.08 feet; thence continuing along the outside perimeter of Town Center Drive, 55.00 feet wide and the arc of a curve to the left, 350.76 feet to a point of curve; said curve having a radius of 1335.48 feet, central angle 15 degrees 02 minutes 55 seconds and a chord bearing and distance North 41 degrees 05 minutes 36 seconds East, 349.76 feet; thence continuing along the outside perimeter of Town Center Drive, 55.00 feet wide and the arc of a curve to the left 19.29 feet, said curve having a radius of 1335.48 feet, central angle 00 degrees 49 minutes 39 seconds, and a chord bearing and distance North 33 degrees 09 minutes 20 seconds East, 19.29 feet to a point; thence South 46 degrees 58 minutes 34 seconds East, 586.70 feet parallel with the line common to Lots 13 and 14 to a point; thence North 88 degrees 01 minute 26 seconds East, 347.37 feet parallel to the line common to Lots 13 and 14 to a point; thence South 46 degrees 58 minutes 34 seconds East, 212.93 feet to a point on the Northerly line of Southfield Freeway and Michigan Avenue Interchange; thence South 35 degrees 01 minute 26 seconds West, 943.82 feet to the Point of Beginning.

A-1

BH01\1204469.4
ID\CKO - 099966/0019

This is to certify that there are no delinquent property taxes owed to our office on this property for the years prior to the date of this instrument. No representation is made as to the status of any tax liens or titles raised to any other office.

No. 883    72-19 P. Hauly    Not Examined

Date 1-21-16    WAYNE COUNTY TREASURER Clerk

2016033250    Page 4 of 4

Together with non-exclusive perpetual Access Rights in the Finger Roads and the Ring Road, as defined and set forth in that certain Deed of Conveyance and Grant and Reservation of Easements between Ford Motor Land Development Corporation and Fairlane Town Center, dated as of August 10, 1973 and recorded March 21, 1974 in Liber 18757, Page 268, as amended by the Amendment thereof dated as of August 10, 1973 and recorded May 17, 1974 in Liber 18805, Page 394, Wayne County Records.

Property Address:  600 Town Center Drive
Tax Parcel No.:  82-09-232-01-003

A-2

BH01\1204469.4
ID\CKO - 099966/0019

Court File No.:

## ONTARIO
## SUPERIOR COURT OF JUSTICE
(Toronto Region)

IN THE MATTER OF an Application by the Attorney General of Ontario pursuant to section 462.33 of the *Criminal Code of Canada* for an Order restraining certain property

B E T W E E N:

### HER MAJESTY THE QUEEN

Applicant

- and -

### EDWARD HARVARD HOLDINGS, LLC and 600 TOWN CENTER REALTY LLC

Respondents
*(ex parte)*

_____

### RESTRAINT ORDER
(Real Property – 600 Town Center Drive, Dearborn, Michigan, U.S.A.)

_____

Susan Ficek
Counsel for the Applicant
Ministry of the Attorney General
Crown Law Office – Criminal
10th Floor, 720 Bay Street
Toronto, Ontario
M7A 2S9
Phone: (416) 326-4583
Fax: (416) 326-4656
Email: susan.ficek@ontario.ca

# EXHIBIT A
# ATTACHMENT A-3

**AND UPON** the Attorney General for Ontario undertaking to pay any damages or costs that may be ordered by a court of competent jurisdiction in relation to the execution and making of this Order.

**AND UPON BEING SATISFIED** that there is no requirement of notice of this Application as giving notice would result in the disappearance, dissipation or reduction of value of the property sought to be restrained or otherwise affect the property so that all or part thereof could not be subject to an order of forfeiture under subsection 462.37(1) or 462.38(2) of the *Criminal Code of Canada.*

**AND UPON BEING SATISFIED** that there are reasonable grounds to believe that there exists property in respect of which an order of forfeiture may be made under subsection 462.37(1) or 462.38(2) of the *Criminal Code of Canada,* to wit:

Real Estate Property:

The land and premises named Historic Pittsfield Building and municipally known as: 55 East Washington, Chicago, Illinois, U.S.A., the Building excluding 13-21 floors, as more fully, substantially and legally described in attached hereto and marked as Schedule "A".

(hereinafter referred "the **Real Estate Property**")

Insurable Interest

Any Insurable interest in the Real Estate Property including the right to receive the proceeds of insurance of any policies of insurance issued against the Real Estate Property.

(hereinafter referred "the **Insurable Interest**")

10th Floor, Toronto, Ontario, M7A 2S9, with a copy of any certificate of insurance or insurance policy in force in respect of the Real Estate Property.

5.      **THIS COURT FURTHER ORDERS** that the Director of Asset Management – Criminal, Ministry of the Attorney General of Ontario, may obtain any statements of account or proof of compliance with respect to: the obligations of the owners under the terms and covenants contained in any rules or other agreements, mortgages, charges or other encumbrance; municipal work orders and by-laws, building code regulations and orders; realty and property taxes and all expenses for fees and utilities, including charges for hydro, water, sewage and gas, assessed or incurred in respect of the real estate property together with any arrears; and insurance premiums with respect to any policies of insurance issued against the Real Estate Property.

6.      **THIS COURT FURTHER ORDERS** that any person or service provider shall provide such statements as outlined in paragraph 5 of this Order, and/or proof of compliance without charge within ten days of a written request by the Director of Asset Management – Criminal, Ministry of the Attorney General of Ontario.

7.      **THIS COURT FURTHER ORDERS** that, if all or a portion of the Real Estate Property is the subject of a rental agreement as of the date of this order, then the owners of the Real Estate Property may continue to rent the Real Estate Property subject to the terms of the existing rental agreement, **PROVIDED THAT** there shall be no variation to any existing rental agreement, and no new rental agreement shall be entered into in respect of the Real Estate Property, except upon the written consent of the Attorney General for Ontario or his agent, or unless otherwise ordered by this Court after giving notice to the Attorney General for Ontario, and to any other interested person or

(c) If the offer to purchase is approved by a Justice of this Court after the hearing of submissions by counsel for the Attorney General for Ontario, the purchaser, the owners, and any other vendor, on their own or by counsel on their behalf, the sale of the real estate property may be completed. Upon the completion of the sale the whole of the purchase price, less approved adjustments, the usual disbursements on a similar sale and any outstanding principal, interest, penalties or costs under any existing mortgage, charge or other encumbrance shall be paid to the Attorney General for Ontario and remain there until further order of this Court or a court of competent jurisdiction;

(d) After the completion of a sale in accordance with subparagraphs (b) or (c) above, the registration of the transfer with the consent of Her Majesty In Right of Ontario, and the registration of an Application to delete this order by the Attorney General for Ontario, this order shall cease to bind the property and the land registrar is authorized and directed to delete this order from title to the property.

9.    **THIS COURT FURTHER ORDERS** that no action, application or other proceedings shall be taken or continued against the Real Estate Property without the written consent of the Attorney General for Ontario or leave of this Court first being obtained, **PROVIDED THAT** this paragraph does not apply to any encumbrancer enforcing any rights arising out of the terms and conditions of any existing mortgage, charge or other encumbrance. In the event that any action, application or other proceeding is commenced by any encumbrancer, other than the Attorney General for

14.     THIS COURT FURTHER ORDERS that a copy of this order shall be registered against any property in accordance with the laws.

15.     FOR GREATER CERTAINTY, as provided by subsections 462.35(2) & (3) of the *Criminal Code of Canada,* this order may continue in force for a period or periods in excess of six months from the date of this order if proceedings are instituted in respect of which the restrained properties may be forfeited.

16.     NOTHING in this order prohibits the registration of a writ of execution by a party whose interest is already registered on title as of the date of this order providing that any sale, pursuant to such a writ, must be approved in accordance with paragraph 3.

Dated at the City of Toronto, Ontario, this   *19* day of *December* , 2017.

_____
Justice
Ontario Superior Court of Justice

*TAKE NOTICE*

Section 462.33(11) of the *Criminal Code of Canada* provides as follows:

> *Any person on whom an order under subsection (3) is served in accordance with this section and who while the order is in force, acts in contravention of or fails to comply with the order is guilty of an indictable offence or an offence punishable on summary conviction.*

DocuSign Envelope ID: E5E0F99E-75C4-4B6A-B367-E03A9C8BC5AC

DocuSign Envelope ID: E5E0F99E-75C4-4B6A-B367-E03A9C8BC5AC

## EXHIBIT "A"
### Legal Description

PARCEL 1:

THAT PART OF LOTS 13, 14 AND THE NORTH 24 FEET OF LOT 12 IN BLOCK 15 IN FORT DEARBORN ADDITION TO CHICAGO, A SUBDIVISION OF THE SOUTHWEST FRACTIONAL QUARTER OF SECTION 10, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THE FOLLOWING PARCEL OF LAND LYING ABOVE A HORIZONTAL PLANE AT ELEVATION +31.10 FEET (CHICAGO CITY DATUM) AND LYING BELOW A HORIZONTAL PLANE AT ELEVATION +133.43 FEET (CHICAGO CITY DATUM), IN COOK COUNTY, ILLINOIS.

FOR INFORMATION ONLY: FLOORS 2 THRU 9

PARCEL 2:

THAT PART OF LOTS 13, 14 AND THE NORTH 24 FEET OF LOT 12 IN BLOCK 15 IN FORT DEARBORN ADDITION TO CHICAGO, A SUBDIVISION OF THE SOUTHWEST FRACTIONAL 1/4 OF SECTION 10, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THE FOLLOWING PARCEL OF LAND LYING ABOVE A HORIZONTAL PLANE AT ELEVATION +126.46 FEET (CHICAGO CITY DATUM) AND LYING BELOW A HORIZONTAL PLANE AT ELEVATION +162.97 FEET (CHICAGO CITY DATUM), IN COOK COUNTY, ILLINOIS.

FOR INFORMATION ONLY: FLOORS 10, 11, AND 12

PARCEL 3:

THAT PART OF LOTS 13 AND 14 AND THE NORTH 24 FEET OF LOT 12 IN BLOCK 15 IN FORT DEARBORN ADDITION TO CHICAGO, A SUBDIVISION OF THE SOUTHWEST FRACTIONAL 1/4 OF SECTION 10, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THE FOLLOWING PARCEL OF LAND LYING ABOVE A HORIZONTAL PLANE AT ELEVATION +284.78 FEET (CHICAGO CITY DATUM) AND LYING BELOW A HORIZONTAL PLANE AT ELEVATION +529.68 FEET (CHICAGO CITY DATUM) IN COOK COUNTY, ILLINOIS.

FOR INFORMATION ONLY: FLOORS 23 THRU 40