## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In Re: ENFORCEMENT OF A RESTRAINING )
ORDER BY THE ONTARIO SUPERIOR COURT )
OF JUSTICE TO RESTRAIN THE FOLLOWING )
PROPERTIES OWNED OR CONTROLLED BY )
XIAO HUA GONG IN THE UNITED STATES )
INCLUDING: )
                                         )
                                         )      1:18-MC- 00072 (KBJ)
ANY OR ALL INTEREST IN REAL PROPERTY )
LOCATED AT 2001 NORTH DIVISION STREET )
(ROUTE 14) HARVARD, ILLINOIS )
                                         )
ANY OR ALL INTEREST IN REAL PROPERTY )
LOCATED AT 600 TOWN CENTER DRIVE, )
DEARBORN, MICHIGAN )
                                         )
ANY OR ALL INTEREST IN REAL PROPERTY )
LOCATED AT 55 EAST WASHINGTON, )
CHICAGO, ILLINOIS on floors 2-12 and 23-40 )

## UNITED STATES' RESPONSE TO ORDER TO SHOW CAUSE

The United States of America, through its undersigned attorney, respectfully submits the

following response to this Court's minute order issued on June 6, 2018, inquiring why this Court

should include in any order enforcing foreign restraining orders two provisions that do not

appear to have been included in the foreign restraining orders which direct the owners of the

property to be restrained 1) not to allow illegal activity to be conducted on the property; and 2)

authorizing the United States to monitor compliance with the Court's restraining order.  As

further set forth below, the United States believes that these provisions mirror the language of the

Canadian Court's restraining order based on Canadian law which the United States seeks to

enforce and United States forfeiture law.

The United States further advises this Court of two proposed modifications to the proposed order regarding these provisions. As discussed below, the revised proposed order submitted with this motion inserts the words "knowingly" to the provision obligating the property owner to not allow illegal activity to take place on the property in Subsection 3(b) and, rather than limiting the monitoring to the U.S. Marshall's Service or the FBI, provides for the United States to be authorized to monitor compliance with this court's order in Subsection 3(d).

## I. Background

The background of the underlying Canadian case out of which the forfeiture orders sought to be registered and enforced were entered is more fully set forth in the United States' *Ex-Parte* Application to Enforce and Register Foreign Restraining Orders (the "U.S.' Application"). In brief, acting upon a Mutual Legal Assistance Treaty request from Canada and pursuant to 28 U.S.C. § 2467(d)(3) and 18 U.S. C. § 983(j)(1), the United States, on May 29, 2018, filed an *ex-parte* application to enforce and register three certified Canadian restraining orders against the captioned assets. Along with the U.S.' Application, the United States attached a proposed restraining order (the "Proposed Restraining Order") for this Court's consideration. In the Proposed Restraining Order, Subsection 3(b) states that the restrained parties "shall not allow illegal activity to occur at any of the Business locations", and Subsection 3(d) states that restrained parties "shall allow the Federal Bureau of Investigation or U.S. Marshall's Service to monitor compliance with this Order by all lawful means." This Court entered a minute order on June 6, 2018 to show cause on why this Court should include these two provisions in any order enforcing the Canadian restraining orders.

## II. Discussion

1. Subsection 3(d) of the Proposed Order - Allowing FBI or USMS to Monitor Compliance

This provision in the United States' proposed order mirrors language in the Canadian orders and U.S. law. The three Canadian restraining orders provide that

> "the Director of Asset Management- Criminal, Ministry of the Attorney General Ontario, may obtain any statements of account or proof of compliance with respect to: the obligations of the owners under the terms and covenants contained in any rules or other agreements, mortgages, charges or other encumbrance; municipal work orders and by-laws, provincial building code regulations and orders; realty and property taxes and all expenses for fees and utilities, including charges for hydro, water, sewage and gas, assessed or incurred in respect to the real estate property together with any in arrears; and insurance premiums with respect to any polices of insurance issued against the Real Estate Property…"

See paragraph 5 of each Attachment A-1, A-2, A-3.

The Canadian orders further provide that "any person or service provider shall provide such statements as outlined in paragraph 5 of this Order, and/or proof of compliance without charge within ten days of a written request by the Director of Asset Management- Criminal, Ministry of the Attorney General of Ontario." *Id.* at ¶6. Paragraph 7 of each of the Orders also provides that the restrained property may be rented but requires consent of the Attorney General for Ontario, and notice to potentially interested parties to modify the lease or enter into a new rental agreement. *Id.* at ¶7. As such, the Canadian restraining orders provided the Director of Asset Management – Criminal, Ministry of Attorney General Ontario with the authority to monitor the property owner's compliance with its financial and legal obligations regarding various matters relating to maintaining the value of the property. This authority set forth in the Canadian orders is based on Article 14.1, the Ontario Crown Attorney Act, which is the provincial law of the province of Ontario, sets forth the responsibility of the Director of Asset Management – Criminal, Ministry of Attorney General Ontario. According to Article 14.1, the Director of Asset Management – Criminal shall be responsible for (a) "taking control of and managing or otherwise dealing with property that is the subject of a management order by the

Attorney General..; (b) administering and managing property that is the subject of a restraint order obtained by the Attorney General...; (c) preserving, managing, selling or otherwise disposing of or dealing with property forfeited to the Crown in right of Ontario; and (d) taking control of, preserving, managing, selling or otherwise disposing of or dealing with any other property that is forfeited to the Crown in right of Ontario..." The Ontario Crown Attorney Act is attached as Exhibit 1.

The responsibilities of the Director of Asset Management- Criminal with respect to the property subject to a restraining order or a forfeiture judgment obtained by the Attorney General of Ontario closely resemble those responsibilities of the Director of the U.S. Marshal's Service (USMS) in regards to the Department of Justice's Asset Forfeiture program. The USMS has the functionally equivalent responsibilities to those of the Director of Asset Management – Criminal in Canada. *See United States v. Park*, 825 F. Supp. 2d 644, 650-53 (D. Md. 2011) (detailing the terms of the restraint of an on-going business and the powers of the USMS as monitors.). Under the proposed orders, the United States is enforcing the Canadian restraining orders because it would be both impractical and complicated to allow the Director of Asset Management – Criminal, Ministry of the Attorney General of Ontario to exercise its authority of monitoring compliance as to the assets located in the United States. This would be accomplished through the U.S. counterpart of the Director of Asset Management –Criminal, the USMS. Under the proposed orders, any law enforcement agency assigned to this matter would be able to assist the USMS in obtaining all necessary compliance information.

Moreover, this Court, pursuant to 28 U.S.C. § 2467(d)(1), has the authority to enter an order authorizing competent United States authorities to monitor compliance with the types of obligations set forth in the Canadian orders which relate to maintaining the value of the

4

restrained property.   Section 2467(d)(1) states that this Court "shall enter such orders as may be necessary to enforce the judgment on behalf of the foreign nation."  This monitoring power which the United States asserts is authorized under § 2467(d)(1) and is parallel to the U.S. District Court's power to monitor compliance with property owner's legal obligations to preserve property subject to a forfeiture proceeding in domestic federal forfeiture actions. Section 2467 specifically cross-references Section 983(j) for the procedural due process safeguards for a restraining order.   In civil forfeiture cases, 18 U.S.C. § 981(j)(1) grants district courts the authority to "enter a restraining order or injunction . . . or take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture". *See, e.g., United States v. Real property located at N4873 Loop Road, Town of Bashaw, Washburn County, Wisconsin, with all appurtenances and improvements thereon,* 2008 WL 582529 at *2 (W.D. Wisconsin, 2008) (ordered that "the United States may monitor potential claimant's compliance with this Order by all lawful means available.").   Similarly, in criminal forfeiture cases, 21 U.S.C. § 853(e)(1)(A) permits district courts "[u]pon application of the United States [to] enter a restraining order or injunction . . . or take any other action to preserve the availability of property" in a criminal forfeiture proceeding. *See United States v. Melrose E. Subdivision,* 357 F.3d 493, 499 (5th Cir. 2004) (characterizing Section 853(e)(1)(A) as "the criminal analogue" of Section 983(j)(1)(A)). *Park,* 825 F. Supp. 2d at 650-53 (D. Md. 2011) (detailing the terms of the restraint of an on-going business and the powers of the USMS as monitors).

Accordingly, this Court's authority pursuant to Section 2467(d)(1) to issue an order permitting or granting the United States to monitor compliance with specified legal and contractual obligations by the owners regarding the restrained properties by all lawful means should be interpreted as analogous to this Court's similar power under U.S. forfeiture laws. *See*

*United States v. Sioux*, 362 F.3d 1241, 1246 (9th Cir. 2004) ("It is an elementary principle of statutory construction that similar language in similar statutes should be interpreted similarly.").

2. Subsection 3(b) of the Proposed Order - Not Allowing Illegal Activity to Occur at the Business Locations

Under Section 853(e)(1)(A) and Section 983(j), in domestic forfeiture cases, district courts may enter an order enjoining the interested parties from knowingly allowing any illegal activity to occur at the property subject to a criminal and civil forfeiture, respectively. This is based on the same need to preserve the value of the property subject to forfeiture. *See, e.g., United States v. Rodney R. Hailey*, 2011 WL 6202239825 (D. Md. N.D. 2011) (enjoined the defendant from knowingly allowing illegal activity to occur at the property under Section 853(e)(1)(A)); *Real property located at N4873 Loop Road, Town of Bashaw, Washburn County, Wisconsin*, with all appurtenances and improvements thereon, 2008 WL 582529 at *1(enjoined the potential claimants from knowingly allowing illegal activity to occur during the pendency of the civil forfeiture action under Section 983(j)); *see also United States v. The proceeds from the sale of a condominium located at the Ritz-Carlton in Los Angeles, California, et al.* 8:15-cv-01110 (C.D.Cal, 2015) at 4. (the restrained parties "shall not allow illegal activity to occur at any of the Business's locations".)

In addition, federal courts are authorized to issue orders to preserve the availability of property during the pendency of foreign forfeiture proceedings. 28 U.S.C. § 2467 (d)(3)(A)(i). Section 2467 cross-references Section 983(j) for the procedural due process safeguards for a restraining order. The purpose of the statutes is to preserve the availability of property subject to criminal or civil forfeiture under foreign law. District courts, pursuant to Section 983(j), have entered a protective order directing interlocutory sale of real property subject to a civil forfeiture in order to preserve the value. *See United States v. 2540 Chadwick Way, Mundelein, IL* 2005 WL

2124539 (N.D. Ill. E.D. 2005) at *2 - *3 ("Pursuant to 18 U.S.C. § 983(j), this Court has jurisdiction to enter orders or take other action to preserve and to protect property to insure that the property will be available for civil forfeiture.").

The need for this requirement is particularly acute with respect to at least two of the three properties sought for restraint. The properties located at 2001 North Division Street (Route 14), Harvard, IL, and 55 East Washington, Chicago, IL on floors 2-12 and 23-40 have been vacant for an extended time. Since the USMS cannot take custody of real property absent a final forfeiture order, these two vacant properties are particularly vulnerable to devaluation, including through instances of vandalism or by unsupervised access and use of the buildings which could result in fires or stripping of the fixtures, wiring and other valuable materials, that could further diminish the value of the property. The *lis pendens* that the United States will record on the property once this Court grants the requested restraining order, would be insufficient to properly and fully preserve and protect the property to ensure that the property will be available for forfeiture. As stated above, this Court under 28 U.S.C. § 2467(d)(1) in the instant case has the same authority to enter the Proposed Restraining Order with Subsection 3(b) imposing the responsibility on the restrained parties not to allow illegal activity to occur on the vacant premises to preserve the value of the property, as "such [an] order . . . [is] necessary to enforce the judgment on behalf of the foreign nation."

For the foregoing reasons, the United States respectfully submits that it has shown cause why this Court should include the two provisions, namely, Subsection 3(b) and (d), in the Proposed Restraining Order with the two modifications as reflected in the revised proposed order, including insertion of the word "knowingly" to Subsection (b) and broadening the possible

law enforcement agencies authorized to carry our this Court's order to the United States in

Subsection 3(d).

> DEBORAH CONNOR, Acting Chief
> Money Laundering and Asset Recovery Section
> Criminal Division
> United States Department of Justice
>
> By: _____
> MARY K. BUTLER
> Chief, International Unit
> Mary.Butler@usdoj.gov
> JENNIFER WALLIS
> Trial Attorney
> Jennifer.Wallis@usdoj.gov
> U.S. Department of Justice
> Criminal Division
> Asset Forfeiture and Money Laundering Section
> 1400 New York Avenue, N.W., 10100
> Washington, D.C. 20530
> Telephone:  (202) 514-1263
>
> Attorneys for Applicant
> UNITED STATES OF AMERICA

# Exhibit 1

Français

# Crown Attorneys Act

## R.S.O. 1990, CHAPTER C.49

**Consolidation Period:** From December 10, 2016 to the e-Laws currency date.

Last amendment: 2015, c. 26, Sched. 4, s. 28.

Legislative History: 1997, c. 26, Sched.; 2002, c. 17, Sched. F, Table; 2005, c. 33, s. 2-4; 2006, c. 19, Sched. C, s. 1 (1); 2006, c. 35, Sched. C, s. 22; 2015, c. 38, Sched. 4, s. 28.

### Appointment

**1** (1) The Lieutenant Governor in Council may appoint a Crown Attorney for each county and district and such Crown Attorneys and assistant Crown Attorneys for the Province as the Lieutenant Governor in Council considers necessary.

### Province-wide authority

(2) The Crown Attorneys and assistant Crown Attorneys appointed for the Province or a county or district thereof shall act anywhere in the Province as directed by the Deputy Attorney General. R.S.O. 1990, c. C.49, s. 1.

### Assistant Crown Attorneys

**2** The Lieutenant Governor in Council may appoint one or more assistant Crown Attorneys for any county or district who shall act under the direction of the Crown Attorney and when so acting has the like powers and shall perform the like duties as the Crown Attorney. R.S.O. 1990, c. C.49, s. 2.

### City of Toronto

**3** (1) The Lieutenant Governor in Council may appoint a Crown Attorney, a Deputy Crown Attorney and such assistant Crown Attorneys as the Lieutenant Governor in Council considers necessary for the City of Toronto who shall be known respectively as the Crown Attorney, the Deputy Crown Attorney and the Assistant Crown Attorneys for the City of Toronto. R.S.O. 1990, c. C.49, s. 3 (1); 1997, c. 26, Sched.

### Idem

(2) The Deputy Crown Attorney and the Assistant Crown Attorneys for the City of Toronto shall act under the direction of the Crown Attorney for the City of Toronto and when so acting shall have the like powers and perform the like duties as the Crown Attorney for the City of Toronto. R.S.O. 1990, c. C.49, s. 3 (2); 1997, c. 26, Sched.

### Section Amendments with date in force (d/m/y)

1997, c. 26, Sched. - 01/01/1998

### Qualification

**4** No person shall be appointed a Crown Attorney or assistant Crown Attorney or act in either of such capacities who is not a member of the bar of Ontario. R.S.O. 1990, c. C.49, s. 4.

### Temporary appointments

**5** (1) When a Crown Attorney or an assistant Crown Attorney is absent or ill or is unable to perform all his or her duties, the Deputy Attorney General may appoint a member of the bar of Ontario to act as Crown Attorney or assistant Crown Attorney, as the case may be, during the period that the Crown Attorney or assistant Crown Attorney is absent or ill or is unable to perform all his or her duties.

### Idem

(2) When there is a vacancy in the office of Crown Attorney, the Deputy Attorney General may appoint a member of the bar of Ontario to act as Crown Attorney until the vacancy is filled by the Lieutenant Governor in Council. R.S.O. 1990, c. C.49, s. 5.

### Provincial prosecutors

**6** (1) The Attorney General may by order authorize public servants employed under Part III of the *Public Service of Ontario Act, 2006* to be provincial prosecutors. R.S.O. 1990, c. C.49, s. 6 (1); 2006, c. 35, Sched. C, s. 22.

**Qualifications**

(2)  A provincial prosecutor may be a person who is not a member of the bar.  R.S.O. 1990, c. C.49, s. 6 (2).

**Jurisdiction**

(3)  A provincial prosecutor shall act anywhere in Ontario as directed by the Deputy Attorney General or a person designated by the Deputy Attorney General.  R.S.O. 1990, c. C.49, s. 6 (3).

**Duties**

(4)  A provincial prosecutor shall conduct such prosecutions for provincial offences and offences punishable on summary conviction as are delegated to him or her by the Crown Attorney for the county or district in which the provincial prosecutor acts and shall be subject to the direction and supervision of the Crown Attorney.  R.S.O. 1990, c. C.49, s. 6 (4).

**Oath**

(5)  Every provincial prosecutor, before entering upon his or her duties, shall take and subscribe before a Crown Attorney the following oath:

> I swear (*or affirm*) that I will truly and faithfully, according to the best of my skill and ability, execute the duties, powers and trusts of provincial prosecutor for Ontario without favour or affection to any party:  So help me God. (*Delete if affirmed*)

R.S.O. 1990, c. C.49, s. 6 (5).

**Section Amendments with date in force (d/m/y)**

2006, c. 35, Sched. C, s. 22 - 20/08/2007

**Security**

**7** Every Crown Attorney shall give security for the due performance of the duties of his or her office and for the due payment of all money received by him or her by virtue thereof, in such sum, and with so many sureties, and in such manner and form as the Lieutenant Governor in Council may direct.  R.S.O. 1990, c. C.49, s. 7.

**Oath of office**

**8** Every Crown Attorney and every assistant Crown Attorney, before entering upon his or her duties, shall take and subscribe before a judge of the Superior Court of Justice the following oath:

> I swear (*or affirm*) that I will truly and faithfully, according to the best of my skill and ability, execute the duties, powers and trusts of Crown Attorney (*or assistant Crown Attorney*) without favour or affection to any party:  So help me God. (*Delete if affirmed*)

R.S.O. 1990, c. C.49, s. 8; 2006, c. 19, Sched. C, s. 1 (1).

**Section Amendments with date in force (d/m/y)**

2006, c. 19, Sched. C, s. 1 (1) - 22/06/2006

**Prohibition**

**9** (1)  No Crown Attorney or assistant Crown Attorney shall, personally or through any partner in the practice of law, act or be directly or indirectly concerned as counsel or solicitor for any person in respect of any offence charged against the person under the laws in force in Ontario.

**Exception**

(2)  Subsection (1) does not apply to part-time assistant Crown Attorneys.  R.S.O. 1990, c. C.49, s. 9.

**Attorney-General's agent**

**10** Every Crown Attorney and every provincial prosecutor is the agent of the Attorney General for the purposes of the *Criminal Code* (Canada).  R.S.O. 1990, c. C.49, s. 10.

**Duties:**

**11** The Crown Attorney shall aid in the local administration of justice and perform the duties that are assigned to Crown Attorneys under the laws in force in Ontario, and, without restricting the generality of the foregoing, every Crown Attorney shall,

**to examine informations, etc.**

    (a) examine informations, examinations, depositions, recognizances, inquisitions and papers connected with offences against the laws in force in Ontario that the provincial judges, justices of the peace and coroners are required to transmit to him or her, and, where necessary, cause such charges to be further investigated, and additional evidence to be collected, and sue out process to compel the attendance of witnesses and the production of papers, so that prosecutions may not be delayed unnecessarily or fail through want of proof;

**to conduct prosecutions**

    (b) conduct, on the part of the Crown, preliminary hearings of indictable offences and prosecutions for indictable offences,

        (i) at the sittings of the Superior Court of Justice where no law officer of the Crown or other counsel has been appointed by the Attorney General,

        (ii) before provincial judges in summary trials of indictable offences under the *Criminal Code* (Canada),

in the same manner as the law officers of the Crown conduct similar prosecutions at the sittings of the Superior Court of Justice, and with the like rights and privileges, and attend to all criminal business at such courts;

**special Crown counsel**

    (c) where a law officer of the Crown or other counsel has been appointed by the Attorney General, deliver to the Crown officer or other counsel all papers connected with the criminal business at the sittings of the Superior Court of Justice before the opening of the court and, if required, be present at the court and assist the Crown officer or other counsel;

**cases brought by private prosecutors**

    (d) watch over cases conducted by private prosecutors and, without unnecessarily interfering with private individuals who wish in such cases to prosecute, assume wholly the conduct of the case where justice towards the accused seems to demand his or her interposition;

**summary conviction matters**

    (e) where in his or her opinion the public interest so requires, conduct proceedings in respect of any provincial offence or offence punishable on summary conviction;

**government prosecutions**

    (f) when requested in writing, cause prosecutions for offences against any Act of the Legislature to be instituted on behalf of any governmental ministry or agency and conduct such prosecutions to judgment and to appeal, if so instructed;

**summary conviction appeals**

    (g) where in his or her opinion the public interest so requires, conduct appeals to the Superior Court of Justice for provincial offences and offences punishable on summary conviction;

**justices of the peace**

    (h) advise justices of the peace with respect to offences against the laws in force in Ontario;

**bail**

    (i) where a prisoner is in custody charged with or convicted of an offence and an application is made for bail, inquire into the facts and circumstances and satisfy himself or herself as to the sufficiency of the surety or sureties offered, and examine and approve of the bail bonds where bail is ordered.  R.S.O. 1990, c. C.49, s. 11; 2006, c. 19, Sched. C, s. 1 (1).

**Section Amendments with date in force (d/m/y)**

2006, c. 19, Sched. C, s. 1 (1) - 22/06/2006

**Provincial judges and justices to deliver informations, etc., to Crown Attorney**

**12** Where a person is committed for trial to answer a criminal charge, the committing provincial judge shall deliver or cause to be delivered without delay to the Crown Attorney the informations, depositions, examinations, recognizances and papers connected with the charge, and the Crown Attorney is the "proper officer of the court by which the accused is to be tried" within the meaning of the committal for trial provisions of the *Criminal Code* (Canada) and, where an information has been laid before a justice of the peace, whether proceedings have been taken thereon or not, the justice shall deliver to the Crown Attorney all papers connected therewith on being required by the Crown Attorney so to do.  R.S.O. 1990, c. C.49, s. 12.

**Collection and payment over of fees**

**13** Every Crown Attorney, except a Crown Attorney on fees, shall collect all fees payable to him or her as Crown Attorney and remit them to the Deputy Attorney General by cheque payable to the Treasurer of Ontario quarterly on the 1st day of January, April, July and October in each year, together with a statement showing the fees collected. R.S.O. 1990, c. C.49, s. 13.

**Annual returns**

**14** Every Crown Attorney shall, on or before the 31st day of January in every year, make to the Deputy Attorney General a return, verified by statutory declaration, of the aggregate amount of the fees and emoluments of his or her office during the preceding year, up to and including the 31st day of December. R.S.O. 1990, c. C.49, s. 14.

**Director of Asset Management – Criminal**

**14.1** (1) The Attorney General shall appoint a person to be the Director of Asset Management – Criminal who shall be responsible for,

(a) taking control of and managing or otherwise dealing with property that is the subject of a management order obtained by the Attorney General under section 83.13, 462.331 or 490.81 of the *Criminal Code* (Canada);

(b) administering and managing property that is the subject of a restraint order obtained by the Attorney General under section 462.33 or 490.8 of the *Criminal Code* (Canada);

(c) preserving, managing, selling or otherwise disposing of or dealing with property forfeited to the Crown in right of Ontario under section 83.14, 199, 462.37, 462.38, 462.43, 490, 490.01, 490.1, 490.2 or 491.1 of the *Criminal Code* (Canada); and

(d) taking control of, preserving, managing, selling or otherwise disposing of or dealing with any other property that is forfeited to the Crown in right of Ontario under a prescribed provision of the *Criminal Code* (Canada).  2005, c. 33, s. 2.

**Same**

(2) The Director shall perform any additional duties assigned to him or her by the Attorney General.  2005, c. 33, s. 2.

**Section Amendments with date in force (d/m/y)**

2005, c. 33, s. 2 - 01/08/2006

**Acting Director**

**14.2** (1) The powers and duties of the Director of Asset Management – Criminal may be exercised and performed by an employee of the Ministry of the Attorney General appointed as Acting Director if,

(a) the Director is absent or unable to act; or

(b) the individual who was appointed Director has ceased to be the Director and no new Director has been appointed.  2005, c. 33, s. 2.

**Same**

(2) An Acting Director shall be appointed by the Director or, if the Director is absent or unable to act, by the Deputy Attorney General.  2005, c. 33, s. 2.

**Section Amendments with date in force (d/m/y)**

2005, c. 33, s. 2 - 01/08/2006

**Director's powers**

**14.3** (1) The Director of Asset Management – Criminal may preserve, manage, sell or otherwise dispose of or deal with any property described in clause 14.1 (1) (c) or (d) that is not money in any manner that he or she considers proper.  2005, c. 33, s. 2.

**Same**

(2) Without limiting the generality of subsection (1), the Director may,

(a) take possession of and preserve or manage the property for the length of time and on the terms that he or she considers proper;

(b) convert the property to money at the price and on the terms that he or she considers proper;

4

(c) sell, assign, dispose of, use, give or transfer the property, or any interest in the property, at the price and upon the terms that he or she considers proper;

(d) do anything he or she considers advisable for the on-going management or operation of the property before its final disposition, including,

  (i) complying with the terms of any order to which the property is subject, including an order to comply with environmental, industrial, labour or property standards or to pay taxes, utility charges or other charges, or

  (ii) making improvements to the property to maintain its economic value; or

(e) sell or otherwise dispose of perishable or rapidly depreciating property. 2005, c. 33, s. 2.

**Protection from personal liability**

(3) No action or other proceeding for damages shall be instituted against the Attorney General, the Director of Asset Management – Criminal, any employee of the Ministry of the Attorney General or any person acting on behalf of the Director for any act done in good faith in the performance or intended performance of any duty under this section or in the exercise or in the intended exercise of any power under this section, or for any neglect or default in the performance or exercise in good faith of any such duty or power. 2005, c. 33, s. 2.

**Same**

(4) Despite subsections 5 (2) and (4) of the *Proceedings Against the Crown Act*, subsection (3) does not relieve the Crown of liability in respect of a tort committed by a person mentioned in subsection (3) to which it would otherwise be subject. 2005, c. 33, s. 2.

Section Amendments with date in force (d/m/y)

2005, c. 33, s. 2 - 01/08/2006

**Management of property forfeited to the Crown**

**14.4** (1) Property that is forfeited to the Crown in right of Ontario as described in clause 14.1 (1) (c) or (d) shall be dealt with and disposed of by the Director of Asset Management – Criminal as provided under sections 14.1 and 14.3. 2005, c. 33, s. 2.

***Escheats Act, 2015* does not apply**

(2) The *Escheats Act, 2015* does not apply to property that is forfeited to the Crown in right of Ontario as described in clause 14.1 (1) (c) or (d). 2015, c. 38, Sched. 4, s. 28.

**Mining lands**

(3) Despite subsection 14.1 (1) and subsection (1) of this section, where mining lands as defined in the *Mining Act* have become forfeited to the Crown in right of Ontario as described in clause 14.1 (1) (c) or (d), such mining lands shall be dealt with and disposed of as Crown lands in the manner provided in the *Mining Act*. 2005, c. 33, s. 2.

Section Amendments with date in force (d/m/y)

2005, c. 33, s. 2 - 01/08/2006

2015, c. 38, Sched. 4, s. 28 - 10/12/2016

**Expenses**

**14.5** The money required for the purposes of the Director of Asset Management – Criminal shall be paid out of the amounts appropriated by the Legislature for those purposes. 2005, c. 33, s. 2.

Section Amendments with date in force (d/m/y)

2005, c. 33, s. 2 - 01/08/2006

**Money credited to Forfeited Proceeds of Crime Accounts**

**14.6** (1) Despite the *Fines and Forfeitures Act*, the following money shall be credited to the separate non-interest bearing accounts in the Consolidated Revenue Fund known as the Ministry of the Attorney General Forfeited Proceeds of Crime Account and the Ministry of Community Safety and Correctional Services Forfeited Proceeds of Crime Account, which may be referred to in French as Compte des produits de la criminalité confisqués du ministère du Procureur général and Compte des produits de la criminalité confisqués du ministère de la Sécurité communautaire et des Services correctionnels, respectively, in the proportions agreed upon by the Attorney General and the Minister of Community Safety and Correctional Services from time to time:

1. Subject to section 462.49 of the *Criminal Code* (Canada),

    i. money forfeited to the Crown in right of Ontario under section 83.14, 199, 462.37, 462.38, 462.43, 490, 490.01, 490.1, 490.2 or 491.1 of the *Criminal Code* (Canada), and

    ii. money that is the proceeds of the sale or other disposition of property described in clause 14.1 (1) (c) or (d).

2. Money provided to the Attorney General or the government that was paid as a fine under,

    i. subsection 462.37 (3) of the *Criminal Code* (Canada),

    ii. any similar provision of any other federal Act, or

    iii. any similar provision of the laws of a jurisdiction outside of Ontario.  2005, c. 33, s. 3.

**Money for a special purpose**

(2) Money standing to the credit of these accounts is, for the purpose of the *Financial Administration Act*, money paid to Ontario for a special purpose.  2005, c. 33, s. 3.

**Same**

(3) The amounts from time to time standing to the credit of these accounts,

    (a) may be paid from the Consolidated Revenue Fund for the purpose of complying with a court order relating to any interest in property that has been forfeited to the Crown in right of Ontario; and

    (b) subject to the approval of the Management Board of Cabinet, may be used to reimburse the Consolidated Revenue Fund for any expenditures incurred for the purposes of crime prevention, law enforcement or the administration of criminal justice, including property management as provided under sections 14.1 and 14.3 and victim restitution, in accordance with the principles agreed upon by the Attorney General and the Minister of Community Safety and Correctional Services from time to time.  2005, c. 33, s. 3.

**Section Amendments with date in force (d/m/y)**

2005, c. 33, s. 3 - 01/08/2006

**Regulations**

**15** The Lieutenant Governor in Council may make regulations,

    (a) prescribing fees and travelling allowances for Crown Attorneys or any class thereof in connection with prosecutions instituted on behalf of any governmental ministry or agency, and providing for the payment and disposition thereof;

    (b) prescribing fees and travelling allowances for Crown Attorneys or any class thereof in connection with appeals to the Superior Court of Justice for provincial offences and offences punishable on summary conviction, and providing for the payment thereof;

    (c) fixing the responsibility for the payment of fees and travelling allowances of Crown Attorneys;

    (d) providing that counsel fees collected from defendants under the *Provincial Offences Act* shall be credited on the Crown Attorney's fees that are properly payable to him or her by a municipality or a governmental ministry or agency;

    (e) providing fees and charges payable to Crown Attorneys not otherwise provided for under this or any other Act, and providing for the payment thereof;

    (f) for carrying out the provisions of any Act imposing duties upon or touching the office of Crown Attorney;

    (g) with respect to the prosecution by Crown Attorneys of offenders against the laws in force in Ontario;

    (h) providing for the safekeeping, inspection and destruction of books, documents and papers of Crown Attorneys;

    (h.1) prescribing provisions of the *Criminal Code* (Canada) for the purpose of clause 14.1 (1) (d);

    (i) respecting any matter necessary or advisable to carry out effectively the intent and purpose of this Act.  R.S.O. 1990, c. C.49, s. 15; 2005, c. 33, s. 4; 2006, c. 19, Sched. C, s. 1 (1).

**Section Amendments with date in force (d/m/y)**

2005, c. 33, s. 4 - 01/08/2006

2006, c. 19, Sched. C, s. 1 (1) - 22/06/2006

**Status quo maintained**

**16** The repeal of the *Municipal Act* on January 1, 2003 does not affect the validity of the appointments of Crown Attorneys and assistant Crown Attorneys existing on that date or subsequent to that date.  2002, c. 17, Sched. F, Table.

**Section Amendments with date in force (d/m/y)**

2002, c. 17, Sched. F, Table - 01/01/2003

_____

Français

Back to top

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In Re: ENFORCEMENT OF A RESTRAINING )
ORDER BY THE ONTARIO SUPERIOR COURT )
OF JUSTICE TO RESTRAIN THE FOLLOWING )
PROPERTIES OWNED OR CONTROLLED BY )
XIAO HUA GONG IN THE UNITED STATES )
INCLUDING: )
                                                    )
                                                    )   1:18-MC- 00072 (KBJ)
ANY OR ALL INTEREST IN REAL PROPERTY )
LOCATED AT 2001 NORTH DIVISION STREET )
(ROUTE 14) HARVARD, ILLINOIS )
                                                    )
ANY OR ALL INTEREST IN REAL PROPERTY )
LOCATED AT 600 TOWN CENTER DRIVE, )
DEARBORN, MICHIGAN )
                                                    )
ANY OR ALL INTEREST IN REAL PROPERTY )
LOCATED AT 55 EAST WASHINGTON, )
CHICAGO, ILLINOIS on floors 2-12 and 23-40 )

## [PROPOSED] <u>**RESTRAINING ORDER**</u>

This matter having come before this Court on the application of the United States of America for a restraining order, pursuant to 28 U.S.C. § 2467(d)(3)(A), (d)(3)(B)(ii) and 18 U.S.C. § 983(j)(1), which provides U.S. district courts with jurisdiction to register and enforce foreign restraining orders and take such other action in connection with any property or other interest subject to forfeiture in a foreign proceeding to ensure its availability for forfeiture; and,

IT APPEARING TO THE COURT THAT:

WHEREAS, through the information provided to this Court in the Application by the United States for Restraining Order pursuant to 28 U.S.C. § 2467(d)(3)(A), (d)(3)(B)(ii) and 18 U.S.C. §983(j)(1), asking for enforcement of three (3) Canadian restraining orders to preserve any or all interest in the following real properties located at:

- 2001 North Division Street (Route 14), Harvard, Illinois (the "Harvard, Illinois

Property)

- 600 Town Center Drive, Dearborn, Michigan (the "Dearborn, Michigan

  Property")

- 55 East Washington, Chicago, Illinois on floors 2-12, and 23-40 (the "Chicago,

  Illinois Property").

a.     This Court has jurisdiction over the subject matter of this case;

b.     Pursuant to 28 U.S.C. §2467 (c)(2)(B), venue is appropriate in the United States District Court for the District of Columbia;

c.     The United States and Canada are parties to a Mutual Legal Assistance Treaty which entered into force on January 24, 1990. *Treaty Between the Government of the United States of America and the Government of Canada on Mutual Legal Assistance in Criminal Matters, U.S.-Can., March 18, 1985, S. Treaty Doc. No. 100-14 (1990)*;

d.     The restraining orders issued by the Ontario Superior Court of Justice, Ontario, Canada, on December 19, 2017, establish that criminal proceedings are pending in Canada against the criminal defendants, Xiao Hua Gong and others, who were charged with various offenses under the Criminal Code of Canada in case no. 17-0365-MO.  The orders further provide that the above specified properties owned by Xiao Hua Gong in the United States are subject to forfeiture under Canadian law;

e.     The criminal conduct giving rise to forfeiture under Canadian law constitutes conduct that would give rise to forfeiture under 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 981(a)(1)(C) or 28 U.S.C. § 2461(c), if committed in the United States;

f.     The Attorney General, in the interest of justice, has certified the attached Canadian restraining orders for enforcement against the captioned assets;

g.     The Canadian restraining orders appear to have been rendered under a system of law compatible with the requirements of due process;

h.     The Ontario Superior Court of Justice in Canada that entered the restraining orders appears to have jurisdiction over the subject matter; and

i.     There is no indication that the restraining orders issued by the Ontario Superior Court of Justice in Canada were obtained by fraud;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED,

PURSUANT TO 28 U.S.C. § 2467(d)(3)(A), (d)(3)(B)(ii) and 18 U.S.C. §983(j)(1), THAT:

1.   The restraining orders issued by the Ontario Superior Court of Justice, Canada, which are attached as Exhibit A-1, A-2, A-3 to this order, are hereby registered and enforced with this Court;

2.   The following properties are hereby RESTRAINED:

> 1) 2001 North Division Street (Route 14), Harvard, Illinois (the "Harvard, Illinois Property)
>
> 2) 600 Town Center Drive, Dearborn, Michigan (the "Dearborn, Michigan Property")
>
> 3) 55 East Washington, Chicago, Illinois on floors 2-12 and 23-40 (the "Chicago, Illinois Property")

3.   All persons, including the Canadian criminal defendants, Xiao Hua Gong, Edward Harvard Holdings, LLC, the owner of the Harvard, Illinois Property; 600 Town Center Realty, LLC, the owner of the Dearborn, Michigan Property; Jewelry Tower LLC, the owner of the Chicago, Illinois Property; and their agents, servants, employees, attorneys, family members and those persons in active concert or participation with them, and anyone holding any interest in the Properties,

> a.   be and are hereby ENJOINED AND RESTRAINED from transferring, selling, assigning, pledging, distributing, giving away, encumbering or otherwise participating in the disposal of or removal from the jurisdiction of this Court, without prior approval of this Court upon notice to the United States and an opportunity for the United States to be heard, except as specified in this Order or any future Orders entered by this Court;
>
> b.   shall not knowingly allow illegal activity to occur at any of the Business's locations;
>
> c.   are required to maintain the present condition of the properties, and ensure timely payment of all rents, insurance, utilities, taxes, and assessments, and adhere to all provisions of any applicable lease, until further order of this Court, and;
>
> d.   shall allow the United States to monitor compliance with this Order by all lawful means available.

5.   The terms of this Order shall remain in full force and effect until the Canadian criminal cases described above are concluded and any forfeiture judgments obtained therein have been presented for enforcement to this Court, or said Properties are sought by Canadian authorities to be released; and

6.      The United States shall make its best efforts to provide a copy of this Court's Order upon individuals and entities affected by this Order, and to anyone else known to the United States as holding a protected interest in the Properties;

7.      The United States may serve a copy of this Order on any affected financial institution by facsimile or electronic mail.


**SO ORDERED.**

Dated:

_____
UNITED STATES DISTRICT COURT JUDGE

4

# EXHIBIT A



**U.S. Department of Justice**

Criminal Division

*Washington, D.C. 20530*

## ASSISTANT ATTORNEY GENERAL DECISION

**DECISION:**

In accordance with 28 U.S.C. § 2467(b)(2), (d)(3)(B)(ii), and the Attorney General's delegation of authority to the Assistant Attorney General for the Criminal Division, Number 2820-2006, I hereby find that it is in the interest of justice to CERTIFY for enforcement the attached three restraining orders issued by the Ontario Superior Court of Canada in Case No. 17-0365-MO on December 19, 2017.

**John Cronan**                                   **Date** 5-21-18
**Acting Assistant Attorney General**
**Criminal Division**

# EXHIBIT A
# ATTACHMENT A-1

Court File No.:

MO 17-0365

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
(Toronto Region)

THE HONOURABLE M )            _Tues_         DAY, THE
                      )
JUSTICE MC MAHON    )            _17_          DAY OF
                      )
                      )        _December_  , 2017
                      )

IN THE MATTER OF an Application by the Attorney General of Ontario pursuant to section 462.33 of the *Criminal Code of Canada* for an Order restraining certain property

B E T W E E N:

**HER MAJESTY THE QUEEN**

Applicant

- and -

**EDWARD HARVARD HOLDINGS, LLC**

Respondent
(*ex parte*)

**RESTRAINT ORDER**
(Real Property – 2001 North Division Street (Route 14) Harvard IL, U.S.A.)

UPON THE *EX PARTE* APPLICATION in writing by the Attorney General for Ontario for an order pursuant to section 462.33 of the *Criminal Code of Canada*.

AND UPON READING the Notice of Application and the Affidavit of Steven Han, peace officer, which affidavit accompanies the Application.

AND UPON the Attorney General for Ontario undertaking to pay any damages or costs that may be ordered by a court of competent jurisdiction in relation to the execution and making of this Order.

AND UPON BEING SATISFIED that there is no requirement of notice of this Application as giving notice would result in the disappearance, dissipation or reduction of value of the property sought to be restrained or otherwise affect the property so that all or part thereof could not be subject to an order of forfeiture under subsection 462.37(1) or 462.38(2) of the *Criminal Code of Canada*.

AND UPON BEING SATISFIED that there are reasonable grounds to believe that there exists property in respect of which an order of forfeiture may be made under subsection 462.37(1) or 462.38(2) of the *Criminal Code of Canada*, to wit:

Real Estate Property:

The land and commercial premises municipally known as: 2001 North Division Street (Route 14) Harvard, IL, U.S.A.; Permanent Real Estate Index Number 01-25-100-018 and 01-25-376-003; as more fully and completely legal description of the property containing in the Special Warranty Deed attached hereto and marked as Schedule "A".

(hereinafter referred "the **Real Estate Property**")

Insurable Interest

Any Insurable interest in the Real Estate Property including the right to receive the proceeds of insurance of any policies of insurance issued against the Real Estate Property.

(hereinafter referred "the **Insurable Interest**")

1.     **THIS COURT ORDERS** that all persons are prohibited from disposing of, or otherwise dealing with, in any manner whatsoever, any interest in the Real Estate Property, except as hereinafter provided.

2.     **THIS COURT FURTHER ORDERS** that no mortgage, hypothec, charge, conveyance of any interest or any other encumbrance whatsoever or agreement to mortgage, charge, hypothec or convey any interest may be entered into in respect of or registered against any of the real estate property except as may be permitted by further order of this Court or with the written consent of the Attorney General of Ontario, and any such mortgage, hypothec, charge, interest or any other encumbrance or agreement noted above shall be deemed void.

3.     'THIS COURT FURTHER ORDERS that no writ of seizure and sale filed after the date of this order shall attach or bind any of the Real Estate Property without an order of a Justice of this Court.

4.     **THIS COURT FURTHER ORDERS** that the registered owners of the Real Estate Property (hereinafter the "owners") or lawful occupants of the Real Estate Property shall be permitted to continue to occupy the real estate property **PROVIDED THAT** the owners shall:

   a) maintain the Real Estate Property in a good state of repair and take all steps reasonably necessary to preserve the Real Estate Property and ensure that the Real Estate Property is insured against all common perils;

   b) within 14 days of service of this order upon the owners, provide the Director of Asset Management – Criminal, Ministry of the Attorney General, 720 Bay Street,

10th Floor, Toronto, Ontario, M7A 2S9, with a copy of any certificate of insurance or insurance policy in force in respect of the Real Estate Property.

5.     THIS COURT FURTHER ORDERS that the Director of Asset Management – Criminal, Ministry of the Attorney General of Ontario, may obtain any statements of account or proof of compliance with respect to: the obligations of the owners under the terms and covenants contained in any rules or other agreements, mortgages, charges or other encumbrance; municipal work orders and by-laws, provincial building code regulations and orders; realty and property taxes and all expenses for fees and utilities, including charges for hydro, water, sewage and gas, assessed or incurred in respect of the real estate property together with any arrears; and insurance premiums with respect to any policies of insurance issued against the Real Estate Property.

6.     THIS COURT FURTHER ORDERS that any person or service provider shall provide such statements as outlined in paragraph 5 of this Order, and/or proof of compliance without charge within ten days of a written request by the Director of Asset Management – Criminal, Ministry of the Attorney General of Ontario.

7.     THIS COURT FURTHER ORDERS that, if all or a portion of the Real Estate Property is the subject of a rental agreement as of the date of this order, then the owners of the Real Estate Property may continue to rent the Real Estate Property subject to the terms of the existing rental agreement, **PROVIDED THAT** there shall be no variation to any existing rental agreement, and no new rental agreement shall be entered into in respect of the Real Estate Property, except upon the written consent of the Attorney General for Ontario or his agent, or unless otherwise ordered by this Court after giving notice to the Attorney General for Ontario, and to any other interested person or

persons and after providing a reasonable opportunity for such persons to make
submissions with respect to the intended variation or new agreement.

8. **THIS COURT FURTHER ORDERS** that the Real Estate Property may be sold in
accordance with the following procedure:

(a) Any offer to purchase any of the Real Estate Property shall be submitted to
the Attorney General for Ontario by the owners or any other vendor before it
is accepted by the owners or any other vendor;

(b) No offer to purchase the Real Estate Property may be accepted by the owners
or any other vendor without the written consent of the Attorney General for
Ontario. If the Attorney General for Ontario approves, the sale of the Real
Estate Property may be completed, and the whole of the purchase price, less
approved adjustments, the usual disbursements on a similar sale and any
outstanding principal, interest, penalties or costs under any existing
mortgage, charge or other encumbrance shall be paid to the Attorney General
for Ontario and remain there until further order of this Court or a court of
competent jurisdiction. If the offer is not approved by the Attorney General
for Ontario or there is any disagreement with respect to the completion of the
sale, a Justice of this Court, on application on three days notice to any
interested party, may approve the sale and give such directions as are
necessary to complete the sale. On such application, counsel for the Attorney
General for Ontario, the purchaser, the owners, and any other vendor, shall
be given a reasonable opportunity to make submissions, on their own or by
counsel on their behalf, to this Court with respect to the offer to purchase or
the completion of the sale;

(c) If the offer to purchase is approved by a Justice of this Court after the hearing of submissions by counsel for the Attorney General for Ontario, the purchaser, the owners, and any other vendor, on their own or by counsel on their behalf, the sale of the real estate property may be completed. Upon the completion of the sale the whole of the purchase price, less approved adjustments, the usual disbursements on a similar sale and any outstanding principal, interest, penalties or costs under any existing mortgage, charge or other encumbrance shall be paid to the Attorney General for Ontario and remain there until further order of this Court or a court of competent jurisdiction;

(d) After the completion of a sale in accordance with subparagraphs (b) or (c) above, the registration of the transfer with the consent of Her Majesty In Right of Ontario, and the registration of an Application to Amend (to delete this order) by the Attorney General for Ontario, this order shall cease to bind the property and the land registrar is authorized and directed to delete this order from title to the property.

9.   THIS COURT FURTHER ORDERS that no action, application or other proceedings shall be taken or continued against the Real Estate Property without the written consent of the Attorney General for Ontario or leave of this Court first being obtained, PROVIDED THAT this paragraph does not apply to any encumbrancer enforcing any rights arising out of the terms and conditions of any existing mortgage, charge or other encumbrance.  In the event that any action, application or other proceeding is commenced by any encumbrancer, other than the Attorney General for

Ontario exercising rights under this Order, the Attorney General for Ontario shall be served in the manner set out in this Order. Nothing in this paragraph shall interfere with the rights of sale set out in this Order.

10.     THIS COURT FURTHER ORDERS that in the event of a claim being made by an insured on a policy of insurance issued against the real estate property, subject to the rights of any mortgagee arising out of a loss payable clause in any policy of insurance, the proceeds of insurance shall be paid into court and remain there until further order of this Court.

11.     THIS COURT FURTHER ORDERS that a copy of this order be served, in any manner provided for in the *Criminal Proceedings Rules,* upon the following persons:

   a) Edward Harvard Holdings, LLC – 600 Town Center, Dearborn, Michigan 48126, IL, U.S.A.;

   b) Xiao Hua Gong – 99 York Mills Road, Toronto, Ontario; and

   c) Xiao Hua Gong – 12A Park Lane Circle, Toronto, Ontario.

12.     THIS COURT FURTHER ORDERS that the Attorney General for Ontario or counsel instructed by him may, on three clear days notice to the Respondent, apply to a Judge of this Court for a variation, amendment to or addition of any term of this Order.

13.     THIS COURT FURTHER ORDERS that service of any documents or notices of any application on the Attorney General for Ontario may be served at the Crown Law Office – Criminal, 720 Bay Street, 10th Floor, Toronto, Ontario, M7A 2S9.

14.   **THIS COURT FURTHER ORDERS** that a copy of this order shall be registered against any property in accordance with the laws.

15.   **FOR GREATER CERTAINTY,** as provided by subsections 462.35(2) & (3) of the *Criminal Code of Canada,* this order may continue in force for a period or periods in excess of six months from the date of this order if proceedings are instituted in respect of which the restrained properties may be forfeited.

16.   **NOTHING** in this order prohibits the registration of a writ of execution by a party whose interest is already registered on title as of the date of this order providing that any sale, pursuant to such a writ, must be approved in accordance with paragraph 3.

Dated at the City of Toronto, Ontario, this   *17*   day of   *December*, 2017.

_____

Justice
Ontario Superior Court of Justice

**_TAKE NOTICE_**

Section 462.33(11) of the *Criminal Code of Canada* provides as follows:

> *Any person on whom an order under subsection (3) is served in accordance with this section and who while the order is in force, acts in contravention of or fails to comply with the order is guilty of an indictable offence or an offence punishable on summary conviction.*

Schedule "A"



*Joseph J. Tirio*
*McHenry County Recorder*

# CERTIFICATION

I, Joseph J. Tirio, Recorder for the County of McHenry, State of Illinois, do hereby certify this to be a true and correct copy of Document Number 2016R0017947 recorded on May 26, 2016 in my office. In witness whereof, I have set my hand and affixed the seal of my office.

DATE: June 14, 2017

*Joseph J. Tirio*
*McHenry County Recorder*

[seal]

by _____
Clerk, Recorder's Office

Located at:  667 Ware Road, Woodstock, IL
Mailing Address:
2200 N. Seminary Avenue, Room 109
Woodstock, IL 60098
815-334-4110        fax 815-334-0276



*This document prepared by:*
Mark Nussbaum
Altman Schochet LLP
225 Broadway, 39th Floor
New York, NY 10007

After recording send to:
James R. Cambridge
Kerr, Russell and Weber, PLC
500 Woodward Avenue, Suite 2500
Detroit, MI 48226

*Send subsequent tax bills to:*
Edward Harvard Holdings,
LLC at 600 Town Center,
Dearborn, Michigan 48126

PHYLLIS K. WALTERS
RECORDER-MCHENRY COUNTY, IL
**2016R0017947**
05/26/2016 02:05PM   PAGES   12
RECORDING FEE       34.00
GIS FEE             15.00
STATE STAMP FEE    9765.00
COUNTY STAMP FEE   4882.50
RHSPS HOUSING FEE   9.00



STATE OF ILLINOIS

MAY.26.16

MC HENRY COUNTY



REAL ESTATE
TRANSFER TAX

1464750

FP351004

## SPECIAL WARRANTY DEED

 THIS INDENTURE, made and entered into as of this 20th day of May, 2016, by and between Optima Harvard Facility LLC, a Delaware Limited Liability Company, whose address is 200 South Biscayne boulevard, 55th floor, Miami, Florida 33131 ("*Grantor*") and Edward Harvard Holdings, LLC, an Illinois limited liability company whose address is 600 Town Center, Dearborn, Michigan 48126 ("*Grantee*").

 WITNESSETH: That for and in consideration of Ten Dollars ($10.00), cash in hand paid, and other good and valuable considerations, the receipt of all of which is hereby acknowledged, the Grantor has bargained and sold and does hereby bargain, sell, convey and confirm unto the Grantee the following described real estate, situated and being in the City of Harvard, County of McHenry State of Illinois:

 For a complete description of the property, see Exhibit A attached hereto and made a part hereof.

 This conveyance is made subject to the items listed on Exhibit B attached hereto and made a part hereof.

 TO HAVE AND TO HOLD the aforesaid real estate, together with all the appurtenances and hereditaments thereunto belonging or in any wise appertaining unto the Grantee, its heirs, or successors and assigns in fee simple forever.

 Grantor does hereby covenant with Grantee that it will warrant and forever defend the title and quiet possession to the hereinabove described property against the lawful claims of all persons claiming by, through or under Grantor, but not further or otherwise.

FIDELITY NATIONAL TITLE 99902614

1 of 1

OAKLAND/505477.1

McHenry County Recorder Phyllis K. Walters # 2016R0017947

Address of Property: 2001 North Division Street (Route 14) Harvard, IL 60033
Permanent Real Estate Index Number: 01-25-100-018 and 01-25-376-003

WITNESS the signature of the Grantor the day and year first above written.

Optima Harvard Facility LLC,
A Delaware Limited Liability Company
By: Optima Ventures LLC, sole member

STATE OF _Florida_ )
                   )ss.
COUNTY OF _Dade_ )

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that Mordechai Korf personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act as such Managing Member of Optima Harvard Facility LLC, a Delaware Limited Liability Company for the uses and purposes therein set forth.

Given under my hand and official seal, this _20_ day of May, 2016.

Notary Public

Commission expires _03/04/2020_

GALINA SHABARSHINA
MY COMMISSION # FF 091971
EXPIRES: March 4, 2020
Bonded Thru Notary Public Underwriters

Fidelity Natl Title Ins
20 N Clark St   Ste 220
Chicago IL 60602   (MT)

OAKLAND/505477.1

McHenry County Recorder Phyllis K. Walters # 2016R0017947

## EXHIBIT A

### Legal Description of Property

LEGAL DESCRIPTION:

PARCEL 1: THAT PART OF THE NORTH HALF OF THE NORTHWEST QUARTER OF SECTION 25, TOWNSHIP 46 NORTH, RANGE 5 EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS: COMMENCING AT THE POINT OF INTERSECTION OF THE CENTER LINE OF U.S. ROUTE 14 WITH A LINE DRAWN PARALLEL WITH AND 445.00 FEET NORTH OF THE SOUTH LINE OF THE NORTH HALF OF THE NORTHWEST QUARTER OF SAID SECTION 25; THENCE EAST ON THE LAST DESCRIBED LINE, A DISTANCE OF 1047.0 FEET TO A POINT; THENCE NORTH AT RIGHT ANGLES TO THE LAST DESCRIBED LINE, AT THE LAST DESCRIBED POINT, FOR A DISTANCE OF 208.0 FEET TO A POINT FOR A PLACE OF BEGINNING; THENCE CONTINUING NORTH ON THE LAST DESCRIBED LINE, FOR A DISTANCE OF 672.27 FEET TO A POINT ON THE NORTH LINE OF THE NORTH HALF OF THE NORTHWEST QUARTER OF SAID SECTION 25; THENCE WEST ON THE LAST DESCRIBED LINE, FOR A DISTANCE OF 616.58 FEET TO A POINT ON THE CENTER LINE OF SAID U.S. ROUTE 14; THENCE SOUTHWESTERLY ON THE CENTER LINE OF SAID U.S. ROUTE 14, FOR A DISTANCE OF 744.81 FEET TO A POINT, SAID POINT BEING ON A LINE DRAWN PARALLEL WITH AND 653.0 FEET NORTH OF THE SOUTH LINE OF THE NORTH HALF OF THE NORTHWEST QUARTER OF SAID SECTION 25; THENCE EAST ON THE LAST DESCRIBED LINE, FOR A DISTANCE OF 943.91 FEET TO THE PLACE OF BEGINNING, EXCEPT THEREFROM THAT PART CONVEYED TO THE STATE OF ILLINOIS, DEPARTMENT OF TRANSPORTATION, BY WARRANTY DEED RE CORDED JANUARY 17, 1995 AS DOCUMENT 95R001818, IN MCHE NRY COUNTY, ILLINOIS; ALSO EXCEPTING THAT PART CONVEYED TO THE CITY OF HARVARD, ILLINOIS FOR HARVARD HILLS ROAD AND CROWLEY ROAD BY CORPORATE QUIT CLAIM DEED FROM MOTOROLA, INC. RE CORDED JUNE 1, 1995 AS DOCUMENT 95R021061.

PARCEL 2: THAT PART OF THE NORTH HALF OF THE NORTHWEST QUARTER OF SECTION 25, TOWNSHIP 46 NORTH, RANGE 5 EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS: COMMENCING AT THE POINT OF INTERSECTION OF THE CENTER LINE OF U.S. HIGHWAY 14 WITH A LINE DRAWN PARALLEL WITH AND 445.0 FEE T NORTH OF THE SOUTH LINE OF THE NORTH HALF OF THE NORTHWEST QUARTER OF SAID SECTION 25 AND RU NNING THE NCE EAST ALONG SAID LAST DESCRIBED LINE, A DISTANCE OF 1047.0 FEE T TO A POINT; THE NCE NORTH AT RIGHT ANGLES TO SAID LAST DESCRIBED COURSE, A DISTANCE OF 208.0 FEE T TO A POINT; THE NCE WEST AT RIGHT ANGLES TO THE LAST DESCRIBED COURSE, TO A POINT ON THE CENTER LINE OF SAID U.S. HIGHWAY 14; THENCE SOUTHER LY ALONG THE CENTER LINE OF SAID U.S. HIGHWAY 14 TO THE PLACE OF BEGINNING, EXCEPT THEREFROM THAT PART CONVEYED TO THE STATE OF ILLINOIS, DEPARTMENT OF TRANSPORTATION, BY WARRANTY DEED RE CORDED JANUARY 17, 1995 AS DOCUMENT 95R001818, IN MCHE NRY COUNTY, ILLINOIS. ALSO

PARCEL 3: THAT PART OF THE WEST HALF OF THE NORTHE AST QUARTER AND THAT PART OF THE NORTHWEST QUARTER OF SECTION 25, TOWNSHIP 46 NORTH, RANGE 5 EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS: BEGINNING AT THE NORTHE AST CORNER OF THE WEST HALF OF THE NORTHE AST QUARTER OF SAID SECTION 25 AND RU NNING THE NCE SOUTH ON THE EAST LINE THERE OF, FOR A DISTANCE OF 863.35 FEE T TO A POINT; THE NCE WESTERLY ON A LINE FORMING AN ANGLE OF 89 DEGREE S, 22 MINUTES, 51 SECONDS TO THE RIGHT, WITH A PROLONGATION OF THE LAST DESCRIBED LINE, AT THE LAST DESCRIBED POINT, FOR A DISTANCE OF 680.67 FEE T TO A POINT; THE NCE WESTERLY IN A STRAIGHT AND DIRE CT LINE, FOR A DISTANCE OF 2103.56 FEE T TO A POINT ON A LINE DRAWN 445 FEE T NORTH OF AND PARALLEL WITH THE SOUTH LINE OF THE NORTH HALF OF THE

NORTHWEST QUARTER OF SAID SECTION 25, SAID POINT BEING 1047 FEE T EAST OF THE CENTER LINE OF U.S. ROU TE 14 AS MEASURE D ALONG THE LAST DESCRIBED PARALLEL LINE; THE NCE NORTH AT RIGHT ANGLES TO THE LAST DESCRIBED LINE, AT THE LAST DESCRIBED POINT, FOR A DISTANCE OF 880.27 FEE T TO A POINT ON THE NORTH LINE OF THE NORTHWEST QUARTER OF SAID SECTION 25; THE NCE EAST ON THE NORTH LINE THERE OF, FOR A DISTANCE OF 1462.88 FEE T TO THE NORTHE AST CORNER THERE OF; THE NCE EAST ON THE NORTH LINE OF THE WEST HALF OF THE NORTHE AST QUARTER OF SAID SECTION 25, FOR A DISTANCE OF 1319.85 FEE T T TO THE PLACE OF BEGINNING, EXCEPT THERE FROM THAT PART CONVEYED TO THE STATE OF ILLINOIS, DEPARTMENT OF TRANSPORTATION, BY WARRANTY DEED RE CORDED JANUARY 17, 1995 AS DOCUMENT NO. 95R001818; ALSO EXCEPTING THAT PART CONVEYED TO THE  CITY OF HARVARD, ILLINOIS FOR HARVARD HILLS ROAD AND CROWLEY ROAD BY CORPORATE QUIT CLAIM DEED FROM MOTORO LA, INC. RE CORDED JUNE 1, 1995 AS DOCUMENT 95R021061, IN MCHE NRY COUNTY, ILLINOIS.

PARCEL 4; PART OF THE NORTHWEST QUARTER OF THE NORTHE AST QUARTER OF SECTION 25,TOWNSHIP 46 NORTH, RANGE 5 EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS:. COMMENCING AT THE NORTHE AST CORNER OF SAID NORTHWEST QUARTER OF THE NORTHE AST QUARTER; THE NCE SOUTHER LY ALONG THE EAST LINE OF SAID NORTHWEST QUARTER, A DISTANCE OF 863.35 FEE T FOR THE PLACE OF BEGINNING; THE NCE CONTINUING SOUTHER LY ALONG SAID EAST LINE, A DISTANCE OF 320.0 FEE T; THE NCE WESTERLY PARALLEL WITH THE NORTH LINE OF SAID NORTHWEST QUARTER, A DISTANCE OF 680.67 FEE T; THE NCE NORTHER LY PARALLEL WITH THE EAST LINE OF SAID NORTHWEST QUARTER, A DISTANCE OF 320.0 FEE T; THE NCE EASTERLY PARALLEL WITH THE NORTH LINE OF SAID NORTHWEST QUARTER, A DISTANCE OF 680.67 FEE T TO THE PLACE OF BEGINNING, IN MCHE NRY COUNTY, ILLINOIS; ALSO EXCEPTING THAT PART CONVEYED TO THE CITY OF HARVARD, ILLINOIS FOR HARVARD HILLS ROAD BY CORPORATE QUIT CLAIM DEED FROM MOTORO LA, INC. RE CORDED JUNE 1, 1995 AS DOCUMENT 95R021061.

PARCEL 5; THAT PART OF THE WEST HALF OF THE NORTHE AST QUARTER AND THAT PART OF THE NORTHWEST QUARTER OF SECTION 25, TOWNSHIP 46 NORTH, RANGE 5 EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS: COMMENCING AT THE NORTHE AST CORNER OF THE WEST HALF OF THE NORTHE AST QUARTER OF SAID SECTION 25 AND RU NNING THE NCE SOUTH ON THE EAST LINE THERE OF, FOR A DISTANCE OF 1183.35 FEE T TO A POINT FOR THE PLACE OF BEGINNING; THE NCE WESTERLY ON A LINE FORMING AN ANGLE OF 89 DEGREE S, 22 MINUTES, 51 SECONDS TO THE RIGHT, WITH A PROLONGATION OF THE LAST DESCRIBED LINE, AT THE LAST DESCRIBED POINT, FOR A DISTANCE OF 680.67 FEE T TO A POINT; THE NCE NORTH PARALLEL WITH THE EAST LINE OF THE WEST HALF OF THE NORTHE AST QUARTER OF SAID SECTION 25, FOR A DISTANCE OF 320 FEE T TO A POINT; THE NCE WESTERLY IN A STRAIGHT AND DIRE CT LINE, FOR A DISTANCE OF 2103.56 FEE T TO A POINT ON A LINE DRAWN 445 FEE T NORTH OF AND PARALLEL WITH THE SOUTH LINE OF THE NORTH HALF OF THE NORTHWEST QUARTER OF SAID SECTION 25, SAID POINT BEING 1047 FEE T EAST OF THE CENTER LINE OF U.S. ROU TE 14 AS MEASURE D ALONG THE LAST DESCRIBED PARALLEL LINE; THE NCE WEST ON THE LAST DESCRIBED LINE, FOR A DISTANCE OF

1179.40 FEE T TO A POINT ON THE WEST LINE OF THE NORTHWEST QUARTER OF SAID SECTION 25;  THE NCE SOUTH ON THE WEST LINE THERE OF, FOR A DISTANCE OF 1768.25 FEE T TO THE SOUTHWEST

CORNER THERE OF; THENCE EAST ON THE SOUTH LINE THERE OF, FOR A DISTANCE OF 2645.07 FEET TO THE SOUTHEAST CORNER THERE OF; THENCE EAST ON THE SOUTH LINE OF THE WEST HALF OF THE NORTHEAST QUARTER OF SAID SECTION 25, FOR A DISTANCE OF 1318.35 FEET TO THE SOUTHEAST CORNER THERE OF; THENCE NORTH ON THE EAST LINE THERE OF, FOR A DISTANCE OF 1455.54 FEET TO THE PLACE OF BEGINNING, (EXCEPTING THEREFROM THAT PART THERE OF LYING WESTERLY OF THE CENTER LINE OF U.S. ROUTE 14), AND EXCEPTING THEREFROM THAT PART CONVEYED TO THE STATE OF ILLINOIS, DEPARTMENT OF TRANSPORTATION, BY WARRANTY DEED RECORDED JANUARY 17, 1995 AS DOCUMENT 95R001818, IN MCHENRY COUNTY, ILLINOIS; ALSO EXCEPTING THAT PART CONVEYED TO THE CITY OF HARVARD, ILLINOIS FOR HARVARD HILLS ROAD BY CORPORATE QUIT CLAIM DEED FROM MOTOROLA, INC. RECORDED JUNE 1, 1995 AS DOCUMENT 95R021061.

PARCEL 6: THE NORTHEAST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 25, TOWNSHIP 46 NORTH, RANGE 5 EAST OF THE THIRD PRINCIPAL MERIDIAN, ALSO THE NORTH 548.65 FEET OF THE SOUTHEAST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 25, TOWNSHIP 46 NORTH, RANGE 5 EAST OF THE THIRD PRINCIPAL MERIDIAN, EXCEPTING FROM THE AFORESAID TAKEN AS A TRACT THAT PART LYING EASTERLY OF THE WESTERLY RIGHT OF WAY LINE OF HARVARD HILLS ROAD, CONVEYED TO THE CITY OF HARVARD BY CORPORATE QUIT CLAIM DEED FROM MOTOROLA, INC. RECORDED JUNE 1, 1995 AS DOCUMENT 95R021061, ALL IN MCHENRY COUNTY, ILLINOIS.

PARCEL 7: THAT PART OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 25, TOWNSHIP 46 NORTH, RANGE 5 EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING NORTH AND WEST OF HARVARD HILLS ROAD, AS SAID HARVARD HILLS ROAD WAS CONVEYED TO THE CITY OF HARVARD, ILLINOIS, BY CORPORATE QUIT CLAIM DEED FROM MOTOROLA, INC., RECORDED JUNE 1, 1995 AS DOCUMENT NUMBER 95R021061, IN MCHENRY COUNTY, ILLINOIS.

# EXHIBIT B

## Permitted Exceptions

OAKLAND/505477.1

Exhibit B, Page 1

McHenry County Recorder Phyllis K Walters # 2016R0017947

# PERMITTED EXCEPTIONS

1.      Intentionally Deleted:

2.      ( Intentionally Deleted,

3.      Intentionally Deleted,

4.      Terms and provisions contained in City of Harvard Ordinance #94-123 annexing the land to the
        City of Harvard recorded August 22, 1994 as document 94R049515,

5.      Rights of the public, the State of Illinois and the municipality in and to that part of the land, if
        any, taken or used for road purposes.

6.      Rights of way for existing drainage tiles, ditches, feeders, laterals and underground pipes, if any,

7.      Easement in favor of Illinois Northern Utilities Company, and its/their respective successors and
        assigns, to install, operate and maintain all equipment necessary for the purpose of serving the
        land and other property, together with the right of access to said equipment, and the provisions
        relating thereto, contained in the grant recorded April 16, 1931 in Book 16 of Miscellaneous
        Records, Page 246,

8.      Easement in favor of Northern Illinois Gas Company, its successors and assigns, to lay, maintain,
        operate, renew, and remove gas mains and other necessary facilities, granted by instrument
        recorded November 18, 1976 as document 679930, and the further terms and provisions
        contained therein.

9.      Rights of Northern Illinois Gas Company, its successors and assigns, to lay, maintain, operate,
        renew, and remove gas mains and other necessary facilities over part of the West 1/2 of the
        Northwest 1/4 of Section 25, Township 46 North, Range 5 East of the Third Principal Meridian,
        lying between the center line of Route 14 and a line drawn 10 feet East of the East right of way
        line with right of access thereto under and by virtue of the permit recorded November 18, 1976
        as document 679930, and the provisions therein contained,

[continued on following page]

10. Permit recorded April 16, 1931 in Book 16 of Miscellaneous Records, Page 249 in favor of Illinois Northern Utilities Company, a corporation of Illinois, its successors and assigns of the right to place and maintain its poles, wires and necessary fixtures, with the right of access to the same for the maintaining thereof and to operate an electric transmission line upon and over the same; also to trim or cut such saplings and trees as may be necessary for the proper construction operation and maintenance of said poles, wires and necessary fixtures upon and over the east side of the highway that passes through grantor's property in the Northwest Quarter of the Northwest · Quarter of Section 25 aforesaid.

11. Rights of the public, the State of Illinois and the municipality in and to so much of the land acquired for road purposes by instrument recorded June 22, 1923 in Book 7 of Miscellaneous Records, Page 194 and by instrument recorded June 22, 1923 in Book 7 of Miscellaneous Records, Page 228.

12. ' Notice by the State of Illinois Department of Public Works and Buildings of an order establishing a freeway by instrument recorded August 16, 1957 as document 327120 and the provisions contained in said instrument.

    Note: Second amendment to the order establishing a freeway providing notice that a portion of the freeway described in the aforementioned order is rescinded, recorded September 22, 1995 as document 95R040311.

13. Rights of Northern Illinois Gas Company, its successors and assigns, to lay, maintain, operate, renew, and remove gas mains and other necessary facilities over that part of the land palling within U.S. Route 14 and within a 10 foot strip lying Easterly of the Easterly right of way line of said Route 14 with right of access thereto under and by virtue of the permit recorded January 6, 1977 as document 683871, and the provisions therein contained.

14. Easement for pole and electric line in favor of Illinois Northern Utilities Company, its successors and/or assigns, as disclosed by unrecorded grant attached to letter from Commonwealth Edison dated June 17, 1994, said grants being dated November 5, 1947 and October 31, 1947, for the side of the highway that forms the east boundary line of the land.

15. Easement in favor of Illinois Northern Utilities Company, and its/their respective successors and assigns, to install, operate and maintain all equipment necessary for the purpose of serving the land and other property, together with the right of access to said equipment, and the provisions relating thereto contained in the grant recorded in Book 16 of Miscellaneous Records, Page 251, affecting part of the Southwest Quarter of the Northwest Quarter of Section 25, Township 46 North, Range 5 East of the Third Principal Meridian and other land.

16. Rights of the public, the State of Illinois and the municipality in and to so much of the land acquired for road purposes by instrument recorded May 8, 1967 as document 472321.

17. Motorola, Inc. Wetland Deed Restriction/Covenant to U.S. Army Corps of Engineers dated April 11, 2003 and recorded May 16, 2003 as document 2003R0064557, and the terms and provisions contained therein, as amended by instrument recorded April 21, 2005 as document 2005R0030512.

18. ~~Existing unrecorded leases, if any, and rights of parties in possession under such unrecorded leases.~~

(Easements)

1. Underground Electric Line(s) Easement dated January 28, 1995 made by Robert
   Anderson and Connie Anderson in favor of Motorola, recorded in the office of the
   Recorder of Deeds of McHenry County, Illinois on March 28, 1995 as Document No.
   95R 010889.

2. Overhead and Underground Electric Line(s) Easement dated January 28, 1995 made by
   Gordon J. Polyock and Jeannette H. Polyock in favor of Motorola, recorded in the office
   of the Recorder of Deeds of McHenry County, Illinois on March 28, 1995 as Document
   No. 95R 010890.

3. Underground Electric Line(s) Easement dated January 28, 1995 made by Alan E. Feragen
   and Gayle M. Feragen in favor of Motorola, recorded in the office of the Recorder of
   Deeds of McHenry County, Illinois on March 28, 1995 as Document No. 95R 010891.

4. Underground Electric Line(s) Easement dated January 28, 1995 made by Peter Ciocchetti
   and Caterina Ciocchetti in favor of Motorola, recorded in the office of the Recorder of
   Deeds of McHenry County, Illinois on March 28, 1995 as Document No. 95R 010892.

5. Underground Electric Line(s) Easement dated January 28, 1995 made by Robert J. Raupp
   and Barbara A. Raupp in favor of Motorola, recorded in the office of the Recorder of
   Deeds of McHenry County, Illinois on March 28, 1995 as Document No. 95R 010893.

6. Overhead and Underground Electric Line(s) Easement dated February 11, 1995 made by
   Man Jong Park a/k/a Man Jang Park and Yuk Bin Park in favor of Motorola, recorded in
   the office of the Recorder of Deeds of McHenry County, Illinois on March 28, 1995 as
   Document No. 95R 010894.

7. Overhead and Underground Electric Line(s) Easement dated February 7, 1995 made by
   Patrick R. Fritz and Dawn M. Fritz in favor of Motorola, recorded in the office of the
   Recorder of Deeds of McHenry County, Illinois on March 28, 1995 as Document No.
   95R 010895.

8. Underground Electric Line(s) Easement dated March 1, 1995 made by Ronald Benschi in
   favor of Motorola, recorded in the office of the Recorder of Deeds of McHenry County,
   Illinois on March 28, 1995 as Document No. 95R 010896.

Court File No.:

## ONTARIO
## SUPERIOR COURT OF JUSTICE
(Toronto Region)

IN THE MATTER OF an Application by the Attorney General of Ontario pursuant to section 462.33 of the *Criminal Code of Canada* for an Order restraining certain property

B E T W E E N:

### HER MAJESTY THE QUEEN

Applicant

- and -

### EDWARD HARVARD HOLDINGS, LLC

Respondent
(*ex parte*)

---

### RESTRAINT ORDER
(Real Property – 2001 North Division Street (Route 14) Harvard IL, U.S.A.)

---

Susan Ficek
Counsel for the Applicant
Ministry of the Attorney General
Crown Law Office – Criminal
10th Floor, 720 Bay Street
Toronto, Ontario
M7A 2S9
Phone: (416) 326-4583
Fax: (416) 326-4656
Email: susan.ficek@ontario.ca

# EXHIBIT A
# ATTACHMENT A-2

Court File No.:
17-0365-MO

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
(Toronto Region)

THE HONOURABLE M           )         _Tues_         DAY, THE
                           )
JUSTICE  MCMAHON           )         _19_           DAY OF
                           )
                           )         _December_ , 2017
                           )

IN THE MATTER OF an Application by the Attorney General of Ontario pursuant to section 462.33 of the *Criminal Code of Canada* for an Order restraining certain property

B E T W E E N:

**HER MAJESTY THE QUEEN**

Applicant

- and -

**EDWARD HARVARD HOLDINGS, LLC**
**and 600 TOWN CENTER REALTY LLC**

Respondents
*(ex parte)*

**RESTRAINT ORDER**
(Real Property -- 600 Town Center Drive, Dearborn, Michigan, U.S.A.)

UPON THE *EX PARTE* APPLICATION in writing by the Attorney General for Ontario for an order pursuant to section 462.33 of the *Criminal Code of Canada*.

AND UPON READING the Notice of Application and the Affidavit of Steven Han, peace officer, which affidavit accompanies the Application.

**AND UPON** the Attorney General for Ontario undertaking to pay any damages or costs that may be ordered by a court of competent jurisdiction in relation to the execution and making of this Order.

**AND UPON BEING SATISFIED** that there is no requirement of notice of this Application as giving notice would result in the disappearance, dissipation or reduction of value of the property sought to be restrained or otherwise affect the property so that all or part thereof could not be subject to an order of forfeiture under subsection 462.37(1) or 462.38(2) of the *Criminal Code of Canada*.

**AND UPON BEING SATISFIED** that there are reasonable grounds to believe that there exists property in respect of which an order of forfeiture may be made under subsection 462.37(1) or 462.38(2) of the *Criminal Code of Canada*, to wit:

Real Estate Property:

The land and commercial premises municipally known as: 600 Town Centre Drive, Dearborn, Michigan 48126, U.S.A.; Tax Parcel Number 82-09-232-01-003; as more fully and completely legal description of the property containing in the Warranty Deed attached hereto and marked as Schedule "A".

(hereinafter referred "the Real Estate Property")

Insurable Interest

Any Insurable interest in the Real Estate Property including the right to receive the proceeds of insurance of any policies of insurance issued against the Real Estate Property.

(hereinafter referred "the Insurable Interest")

1.   · THIS COURT ORDERS that all persons are prohibited from disposing of, or otherwise dealing with, in any manner whatsoever, any interest in the Real Estate Property, except as hereinafter provided.

2.   THIS COURT FURTHER ORDERS that no mortgage, hypothec, charge, conveyance of any interest or any other encumbrance whatsoever or agreement to mortgage, charge, hypothec or convey any interest may be entered into in respect of or registered against any of the real estate property except as may be permitted by further order of this Court or with the written consent of the Attorney General of Ontario, and any such mortgage, hypothec, charge, interest or any other encumbrance or agreement noted above shall be deemed void.

3.   THIS COURT FURTHER ORDERS that no writ of seizure and sale filed after the date of this order shall attach or bind any of the Real Estate Property without an order of a Justice of this Court.

4.   THIS COURT FURTHER ORDERS that the registered owners of the Real Estate Property (hereinafter the "owners") or lawful occupants of the Real Estate Property shall be permitted to continue to occupy the real estate property PROVIDED THAT the owners shall:

   a) maintain the Real Estate Property in a good state of repair and take all steps reasonably necessary to preserve the Real Estate Property and ensure that the Real Estate Property is insured against all common perils;

   b) within 14 days of service of this order upon the owners, provide the Director of Asset Management – Criminal, Ministry of the Attorney General, 720 Bay Street,

10th Floor, Toronto, Ontario, M7A 2S9, with a copy of any certificate of insurance or insurance policy in force in respect of the Real Estate Property.

5.     THIS COURT FURTHER ORDERS that the Director of Asset Management – Criminal, Ministry of the Attorney General of Ontario, may obtain any statements of account or proof of compliance with respect to: the obligations of the owners under the terms and covenants contained in any rules or other agreements, mortgages, charges or other encumbrance; municipal work orders and by-laws, provincial building code regulations and orders; realty and property taxes and all expenses for fees and utilities, including charges for hydro, water, sewage and gas, assessed or incurred in respect of the real estate property together with any arrears; and insurance premiums with respect to any policies of insurance issued against the Real Estate Property.

6.     THIS COURT FURTHER ORDERS that any person or service provider shall provide such statements as outlined in paragraph 5 of this Order, and/or proof of compliance without charge within ten days of a written request by the Director of Asset Management – Criminal, Ministry of the Attorney General of Ontario.

7.     THIS COURT FURTHER ORDERS that, if all or a portion of the Real Estate Property is the subject of a rental agreement as of the date of this order, then the owners of the Real Estate Property may continue to rent the Real Estate Property subject to the terms of the existing rental agreement, PROVIDED THAT there shall be no variation to any existing rental agreement, and no new rental agreement shall be entered into in respect of the Real Estate Property, except upon the written consent of the Attorney General for Ontario or his agent, or unless otherwise ordered by this Court after giving notice to the Attorney General for Ontario, and to any other interested person or

persons and after providing a reasonable opportunity for such persons to make submissions with respect to the intended variation or new agreement.

8.     **THIS COURT FURTHER ORDERS** that the Real Estate Property may be sold in accordance with the following procedure:

(a) Any offer to purchase any of the Real Estate Property shall be submitted to the Attorney General for Ontario by the owners or any other vendor before it is accepted by the owners or any other vendor;

(b) No offer to purchase the Real Estate Property may be accepted by the owners or any other vendor without the written consent of the Attorney General for Ontario. If the Attorney General for Ontario approves, the sale of the Real Estate Property may be completed, and the whole of the purchase price, less approved adjustments, the usual disbursements on a similar sale and any outstanding principal, interest, penalties or costs under any existing mortgage, charge or other encumbrance shall be paid to the Attorney General for Ontario and remain there until further order of this Court or a court of competent jurisdiction. If the offer is not approved by the Attorney General for Ontario or there is any disagreement with respect to the completion of the sale, a Justice of this Court, on application on three days notice to any interested party, may approve the sale and give such directions as are necessary to complete the sale. On such application, counsel for the Attorney General for Ontario, the purchaser, the owners, and any other vendor, shall be given a reasonable opportunity to make submissions, on their own or by counsel on their behalf, to this Court with respect to the offer to purchase or the completion of the sale;

(c) If the offer to purchase is approved by a Justice of this Court after the hearing of submissions by counsel for the Attorney General for Ontario, the purchaser, the owners, and any other vendor, on their own or by counsel on their behalf, the sale of the real estate property may be completed. Upon the completion of the sale the whole of the purchase price, less approved adjustments, the usual disbursements on a similar sale and any outstanding principal, interest, penalties or costs under any existing mortgage, charge or other encumbrance shall be paid to the Attorney General for Ontario and remain there until further order of this Court or a court of competent jurisdiction;

(d) After the completion of a sale in accordance with subparagraphs (b) or (c) above, the registration of the transfer with the consent of Her Majesty In Right of Ontario, and the registration of an Application to Amend (to delete this order) by the Attorney General for Ontario, this order shall cease to bind the property and the land registrar is authorized and directed to delete this order from title to the property.

9.    **THIS COURT FURTHER ORDERS** that no action, application or other proceedings shall be taken or continued against the Real Estate Property without the written consent of the Attorney General for Ontario or leave of this Court first being obtained, **PROVIDED THAT** this paragraph does not apply to any encumbrancer enforcing any rights arising out of the terms and conditions of any existing mortgage, charge or other encumbrance. In the event that any action, application or other proceeding is commenced by any encumbrancer, other than the Attorney General for

Ontario exercising rights under this Order, the Attorney General for Ontario shall be served in the manner set out in this Order.  Nothing in this paragraph shall interfere with the rights of sale set out in this Order.

10.   **THIS COURT FURTHER ORDERS** that in the event of a claim being made by an insured on a policy of insurance issued against the real estate property, subject to the rights of any mortgagee arising out of a loss payable clause in any policy of insurance, the proceeds of insurance shall be paid into court and remain there until further order of this Court.

11.   **THIS COURT FURTHER ORDERS** that a copy of this order be served, in any manner provided for in the *Criminal Proceedings Rules*, upon the following persons:

   a)  Edward Harvard Holdings, LLC – 600 Town Center, Dearborn, Michigan 48126, IL, U.S.A.;

   b)  600 Town Centre Realty LLC – 185 Yorkland Boulevard, Toronto, Ontario;

   c)  Xiao Hun Gong – 185 Yorkland Boulevard, Toronto, Ontario;

   d)  Xiao Hun Gong – 99 York Mills Road, Toronto, Ontario; and

   e)  Xiao Hun Gong – 12A Park Lane Circle, Toronto, Ontario.

12.   **THIS COURT FURTHER ORDERS** that the Attorney General for Ontario or counsel instructed by him may, on three clear days notice to the Respondent, apply to a Judge of this Court for a variation, amendment to or addition of any term of this Order.

Restraint Order – Page 8

13.     THIS COURT FURTHER ORDERS that service of any documents or notices of any application on the Attorney General for Ontario may be served at the Crown Law Office – Criminal, 720 Bay Street, 10th Floor, Toronto, Ontario, M7A 2S9.

14.     THIS COURT FURTHER ORDERS that a copy of this order shall be registered against any property in accordance with the laws.

15.     FOR GREATER CERTAINTY, as provided by subsections 462.35(2) & (3) of the *Criminal Code*, this order may continue in force for a period or periods in excess of six months from the date of this order if proceedings are instituted in respect of which the restrained properties may be forfeited.

16.     NOTHING in this order prohibits the registration of a writ of execution by a party whose interest is already registered on title as of the date of this order providing that any sale, pursuant to such a writ, must be approved in accordance with paragraph 3.

Dated at the City of Toronto, Ontario, this   *19*   day of   *December* 2017.

_____
Justice
Ontario Superior Court of Justice

*TAKE NOTICE*

Section 462.33(11) of the *Criminal Code of Canada* provides as follows:

*Any person on whom an order under subsection (3) is served in accordance with this section and who while the order is in force, acts in contravention of or fails to*

*comply with the order is guilty of an indictable offence or an offence punishable on summary conviction.*

Schedule "A"

**JUL JAN 21  PM 3: 38**

Bernard J. Youngblood
Wayne County Register of Deeds
2016033260
01/21/2016 03:38 PM  L: 52686 P: 1464
UD     Total Pages: 4

## WARRANTY DEED

On January 14, 2016, ROYAL REALTY, LLC, a Michigan Limited Liability Company, whose address is 600 Town Centre Drive, Dearborn, Michigan 48126 (Grantor), conveys and warrants to 600 TOWN CENTER REALTY LLC, whose address is 185 Yorkland Blvd., North York, Ontario M214R2 (Grantee), the real property commonly known as 600 Town Centre Drive, Dearborn, Michigan 48126, and described on Exhibit A (the Premises)

for **Twenty Million ($20,000,000.00) Dollars**

Subject to any easements and building and use restrictions of record and the lien of taxes not yet due and payable.

Grantors grants to Grantee the right to make all divisions under Section 108 of the Land Division Act, Act No. 288 of the Public Acts of 1967. This property may be located within the vicinity of farmland or a farm operation. Generally accepted agricultural and management practices which may generate noise, dust, odors, and other associated conditions may be used and protected by the Michigan Right to Farm Act.

[Signature and notary jurat appear on the following page]

MICHIGAN REAL ESTATE TRANSFER TAX
Wayne County  Tax Stamp #594332
01/21/2016
Receipt# 16-30725  L: 52686 P: 1464
State Tax: $150000.00 County Tax: $22000.00

726910BH

2016033250    Page 2 of 4

Dated: January 14, 2016

Royal Realties, LLC :

By: _____
Its:   Sidney Elhadad
       Manager

STATE OF MICHIGAN      )
COUNTY OF OAKLAND      )

The foregoing instrument was acknowledged before me on January 14, 2016 by Sidney Elhadad, a manager of Royal Realties, LLC, a Michigan limited liability company, on behalf of the Limited Liability Company.

_____
WILLIAM VITALE
Notary Public, State of Michigan
My Commission expires  8/23  , 2018
Acting in the County of  Oakland

Drafted by:
Eric J. Gould, Esq.
26862 Woodward Avenue, Suite 200
Royal Oak, MI 48067

When recorded return to and Send subsequent tax bills to:
Xian Hun Gong
185 Yorkland Blvd.
North York, Ontario M214R2
CANADA

Recording Fee:                        Transfer Tax:
                                      STATE: $150,000.00
                                      COUNTY: $22,000.00

2016033250   Page 3 of 4

## EXHIBIT A

### REAL PROPERTY

Real property in the City of Dearborn, County of Wayne, State of Michigan, described as follows:

Parcel of land being Lot 14 and part of Lot 13, part of Lot 15, part of Lot 16, and part of Lot 17 of Fairlane Town Center, a subdivision of part of the Southeast 1/4 of Fractional Section 14, Town 2 South, Range 10 East, and part of Private Claims 317 and 318, and Private Claims 662 and 663, City of Dearborn, Wayne County, Michigan, recorded in Liber 96, Pages 29 through 46, Wayne County Records, and more particularly described as: Beginning at the lot common to Lots 14 and 15 and the Northerly line of Southfield Freeway and Michigan Avenue Interchange; thence South 60 degrees 30 minutes 49 seconds West, 237.84 feet along a line common to Lot 15 and the Northerly line of Southfield Freeway and Michigan Avenue Interchange; thence South 78 degrees 52 minutes 34 seconds West, 307.92 feet along a line common to Lot 15 and the Northerly line of Southfield Freeway and Michigan Avenue Interchange; thence North 02 degrees 15 minutes 58 seconds West, 290.96 feet to a point on a line common to Lots 15 and 16; thence North 26 degrees 54 minutes 30 seconds East, 61.00 feet along a line common to Lots 15 and 16, to a point of curve; thence Northeasterly along a line common to Lots 15 and 16, and the arc of a curve to the right 72.99 feet, said curve having a radius of 75.00 feet, central angle 55 degrees 45 minutes 37 seconds and a chord bearing and distance North 54 degrees 47 minutes 18 seconds East, 70.14 feet; thence North 01 degree 58 minutes 34 seconds West, 245.30 feet parallel with the line common to Lots 14 and 16; thence North 46 degrees 58 minutes 34 seconds West, 611.29 feet parallel with the line common to Lots 14 and 17, to a point on a curve, said point being on the outside perimeter of Town Center Drive, 55.00 feet wide; thence Easterly along the outside perimeter of Town Center Drive, 55.00 feet wide and the arc of a curve to the left, 88.47 feet to a point on a curve, and also the lot corner common to Lots 14 and 17, said curve having a radius of 827.61 feet, central angle of 06 degrees 07 minutes 30 seconds and chord bearing and distance North 66 degrees 40 minutes 54 seconds East, 88.43 feet; thence continuing along the outside perimeter of Town Center Drive 55.00 feet wide and the arc of a curve to the left, 216.70 feet to a point on a curve, said curve having a radius of 827.61 feet, central angle 15 degrees 00 minutes 08 seconds, and a chord bearing and distance North 56 degrees 07 minutes 07 seconds East, 216.08 feet; thence continuing along the outside perimeter of Town Center Drive, 55.00 feet wide and the arc of a curve to the left, 350.76 feet to a point of curve, said curve having a radius of 1335.48 feet, central angle 15 degrees 02 minutes 55 seconds and a chord bearing and distance North 41 degrees 05 minutes 36 seconds East, 349.76 feet; thence continuing along the outside perimeter of Town Center Drive, 55.00 feet wide and the arc of a curve to the left 19.29 feet, said curve having a radius of 1335.48 feet, central angle 00 degrees 49 minutes 39 seconds, and a chord bearing and distance North 33 degrees 09 minutes 20 seconds East, 19.29 feet to a point; thence South 46 degrees 58 minutes 34 seconds East, 586.70 feet parallel with the line common to Lots 13 and 14 to a point; thence North 88 degrees 01 minute 26 seconds East, 347.37 feet parallel to the line common to Lots 13 and 14 to a point; thence South 46 degrees 58 minutes 34 seconds East, 212.93 feet to a point on the Northerly line of Southfield Freeway and Michigan Avenue Interchange; thence South 35 degrees 01 minute 26 seconds West, 943.82 feet to the Point of Beginning.

A-1

This is to certify that there are no delinquent property taxes owing to our office on this property for the years prior to the date of this Instrument. No representation is made as to the status of any tax liens or titles noted to any other notice.

Rec $883 ___ Tax ___ P $ ___ Not Examined

Date 1-31-16   WAYNE COUNTY TREASURER Clerk

BH\DJ\12044694
IDVCKO - 099966/0019

2016033250   Page 4 of 4

Together with non-exclusive perpetual Access Rights in the Finger Roads and the Ring Road, as defined and set forth in that certain Deed of Conveyance and Grant and Reservation of Easements between Ford Motor Land Development Corporation and Fairlane Town Center, dated as of August 10, 1973 and recorded March 21, 1974 in Liber 18757, Page 268, as amended by the Amendment thereof dated as of August 10, 1973 and recorded May 17, 1974 in Liber 18805, Page 394, Wayne County Records.

Property Address:  600 Town Center Drive
Tax Parcel No.:  82-09-232-01-003

A-2

BB0N\204469.4
JD\CKO - 099966/0019

Court File No.:

## ONTARIO
## SUPERIOR COURT OF JUSTICE
### (Toronto Region)

IN THE MATTER OF an Application by the Attorney General of Ontario pursuant to section 462.33 of the *Criminal Code of Canada* for an Order restraining certain property

B E T W E E N:

### HER MAJESTY THE QUEEN

Applicant

- and -

### EDWARD HARVARD HOLDINGS, LLC and 600 TOWN CENTER REALTY LLC

Respondents
*(ex parte)*

---

### RESTRAINT ORDER
(Real Property – 600 Town Center Drive, Dearborn, Michigan, U.S.A.)

---

Susan Ficek
Counsel for the Applicant
Ministry of the Attorney General
Crown Law Office – Criminal
10th Floor, 720 Bay Street
Toronto, Ontario
M7A 2S9
Phone: (416) 326-4583
Fax: (416) 326-4656
Email: susan.ficek@ontario.ca

# EXHIBIT A
# ATTACHMENT A-3

AND UPON the Attorney General for Ontario undertaking to pay any damages or costs that may be ordered by a court of competent jurisdiction in relation to the execution and making of this Order.

AND UPON BEING SATISFIED that there is no requirement of notice of this Application as giving notice would result in the disappearance, dissipation or reduction of value of the property sought to be restrained or otherwise affect the property so that all or part thereof could not be subject to an order of forfeiture under subsection 462.37(1) or 462.38(2) of the *Criminal Code of Canada*.

AND UPON BEING SATISFIED that there are reasonable grounds to believe that there exists property in respect of which an order of forfeiture may be made under subsection 462.37(1) or 462.38(2) of the *Criminal Code of Canada*, to wit:

Real Estate Property:

The land and premises named Historic Pittsfield Building and municipally known as: 55 East Washington, Chicago, Illinois, U.S.A., the Building excluding 13-21 floors, as more fully, substantially and legally described in attached hereto and marked as Schedule "A".

(hereinafter referred "the Real Estate Property")

Insurable Interest

Any Insurable interest in the Real Estate Property including the right to receive the proceeds of insurance of any policies of insurance issued against the Real Estate Property.

(hereinafter referred "the Insurable Interest")

10th Floor, Toronto, Ontario, M7A 2S9, with a copy of any certificate of insurance
or insurance policy in force in respect of the Real Estate Property.

5.      **THIS COURT FURTHER ORDERS** that the Director of Asset Management –
Criminal, Ministry of the Attorney General of Ontario, may obtain any statements of
account or proof of compliance with respect to: the obligations of the owners under the
terms and covenants contained in any rules or other agreements, mortgages, charges or
other encumbrance; municipal work orders and by-laws, building code regulations and
orders; realty and property taxes and all expenses for fees and utilities, including
charges for hydro, water, sewage and gas, assessed or incurred in respect of the real
estate property together with any arrears; and insurance premiums with respect to any
policies of insurance issued against the Real Estate Property.

6.      **THIS COURT FURTHER ORDERS** that any person or service provider shall
provide such statements as outlined in paragraph 5 of this Order, and/or proof of
compliance without charge within ten days of a written request by the Director of Asset
Management – Criminal, Ministry of the Attorney General of Ontario.

7.      **THIS COURT FURTHER ORDERS** that, if all or a portion of the Real Estate
Property is the subject of a rental agreement as of the date of this order, then the owners
of the Real Estate Property may continue to rent the Real Estate Property subject to the
terms of the existing rental agreement, **PROVIDED THAT** there shall be no variation to
any existing rental agreement, and no new rental agreement shall be entered into in
respect of the Real Estate Property, except upon the written consent of the Attorney
General for Ontario or his agent, or unless otherwise ordered by this Court after giving
notice to the Attorney General for Ontario, and to any other interested person or

(c) If the offer to purchase is approved by a Justice of this Court after the hearing of submissions by counsel for the Attorney General for Ontario, the purchaser, the owners, and any other vendor, on their own or by counsel on their behalf, the sale of the real estate property may be completed. Upon the completion of the sale the whole of the purchase price, less approved adjustments, the usual disbursements on a similar sale and any outstanding principal, interest, penalties or costs under any existing mortgage, charge or other encumbrance shall be paid to the Attorney General for Ontario and remain there until further order of this Court or a court of competent jurisdiction;

(d) After the completion of a sale in accordance with subparagraphs (b) or (c) above, the registration of the transfer with the consent of Her Majesty In Right of Ontario, and the registration of an Application to delete this order by the Attorney General for Ontario, this order shall cease to bind the property and the land registrar is authorized and directed to delete this order from title to the property.

9. **THIS COURT FURTHER ORDERS** that no action, application or other proceedings shall be taken or continued against the Real Estate Property without the written consent of the Attorney General for Ontario or leave of this Court first being obtained, **PROVIDED THAT** this paragraph does not apply to any encumbrancer enforcing any rights arising out of the terms and conditions of any existing mortgage, charge or other encumbrance. In the event that any action, application or other proceeding is commenced by any encumbrancer, other than the Attorney General for

<u>Restraint Order – **Page 8**</u>

14.    THIS COURT FURTHER ORDERS that a copy of this order shall be registered against any property in accordance with the laws.

15.    FOR GREATER CERTAINTY, as provided by subsections 462.35(2) & (3) of the *Criminal Code of Canada,* this order may continue in force for a period or periods in excess of six months from the date of this order if proceedings are instituted in respect of which the restrained properties may be forfeited.

16.    NOTHING in this order prohibits the registration of a writ of execution by a party whose interest is already registered on title as of the date of this order providing that any sale, pursuant to such a writ, must be approved in accordance with paragraph 3.

Dated at the City of Toronto, Ontario, this    *19* day of *December* , 2017.

_____
Justice
Ontario Superior Court of Justice

<u>*TAKE NOTICE*</u>

Section 462.33(11) of the *Criminal Code of Canada* provides as follows:

> *Any person on whom an order under subsection (3) is served in accordance with this section and who while the order is in force, acts in contravention of or fails to comply with the order is guilty of an indictable offence or an offence punishable on summary conviction.*

DocuSign Envelope ID: E5E0F99E-75C4-486A-B367-E03A9C8BC6AC

DocuSign Envelope ID: E5E0F99E-75C4-486A-B367-E03A9C8BC6AC

**EXHIBIT "A"**
Legal Description

PARCEL 1:

THAT PART OF LOTS 13, 14 AND THE NORTH 24 FEET OF LOT 12 IN BLOCK 15 IN FORT DEARBORN ADDITION TO CHICAGO, A SUBDIVISION OF THE SOUTHWEST FRACTIONAL QUARTER OF SECTION 10, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THE FOLLOWING PARCEL OF LAND LYING ABOVE A HORIZONTAL PLANE AT ELEVATION +31.10 FEET (CHICAGO CITY DATUM) AND LYING BELOW A HORIZONTAL PLANE AT ELEVATION +133.43 FEET (CHICAGO CITY DATUM), IN COOK COUNTY, ILLINOIS.

FOR INFORMATION ONLY: FLOORS 2 THRU 9

PARCEL 2:

THAT PART OF LOTS 13, 14 AND THE NORTH 24 FEET OF LOT 12 IN BLOCK 15 IN FORT DEARBORN ADDITION TO CHICAGO, A SUBDIVISION OF THE SOUTHWEST FRACTIONAL 1/4 OF SECTION 10, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THE FOLLOWING PARCEL OF LAND LYING ABOVE A HORIZONTAL PLANE AT ELEVATION +126.46 FEET (CHICAGO CITY DATUM) AND LYING BELOW A HORIZONTAL PLANE AT ELEVATION +162.97 FEET (CHICAGO CITY DATUM), IN COOK COUNTY, ILLINOIS.

FOR INFORMATION ONLY: FLOORS 10, 11, AND 12

PARCEL 3:

THAT PART OF LOTS 13 AND 14 AND THE NORTH 24 FEET OF LOT 12 IN BLOCK 15 IN FORT DEARBORN ADDITION TO CHICAGO, A SUBDIVISION OF THE SOUTHWEST FRACTIONAL 1/4 OF SECTION 10, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THE FOLLOWING PARCEL OF LAND LYING ABOVE A HORIZONTAL PLANE AT ELEVATION +284.78 FEET (CHICAGO CITY DATUM) AND LYING BELOW A HORIZONTAL PLANE AT ELEVATION +529.68 FEET (CHICAGO CITY DATUM) IN COOK COUNTY, ILLINOIS.

FOR INFORMATION ONLY: FLOORS 23 THRU 40

Court File No.:

ONTARIO
SUPERIOR COURT OF JUSTICE
(Toronto Region)

IN THE MATTER OF an Application by the Attorney
General of Ontario pursuant to section 462.33 of the
*Criminal Code of Canada* for an Order restraining
certain property

B E T W E E N:

HER MAJESTY THE QUEEN

Applicant

- and -

EDWARD HOTEL DETROIT LLC and
XIAO HUA GONG

Respondents
(*ex parte*)

RESTRAINT ORDER
(Real Property – 55 East Washington, Chicago,
Illinois, U.S.A.)

Susan Ficek
Counsel for the Applicant
Ministry of the Attorney General
Crown Law Office – Criminal
10th Floor, 720 Bay Street
Toronto, Ontario
M7A 2S9
Phone: (416) 326-4583
Fax: (416) 326-4656
Email: susan.ficek@ontario.ca